MORRIS HAMBURGER, PLAINTIFF-APPELLANT, v. PATER-
SON TALLOW COMPANY, A BODY CORPORATE, DE-
FENDANT-RESPONDENT.

Argued January 17, 1939—Decided April 10, 1939.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and
HEHER.

For the appellant, *Marcus & Levy* (*Louis Santorf*, of
counsel).

For the respondent, *Hunziker & Hunziker*.

The opinion of the court was delivered by

HEHER, J. The judicial action assigned for error on this appeal is the direction of a verdict for defendant.

Plaintiff sued to recover damages for injuries claimed to have resulted from the negligence of defendant's servant in the operation of a motor vehicle on February 6th, 1937. He was struck by the vehicle—owned and operated by one Smith—at a highway intersection in the city of Paterson. Smith was then in the employ of defendant as a bookkeeper. In the ensuing month of April, Smith negotiated, through his employer's attorney, a settlement of plaintiff's claim for damages for the sum of $75, payable "in installments of no less than Ten ($10) Dollars per month." The terms were reduced to writing. It was further therein provided that, in the event of a default in the payment of a monthly installment as so promised, the plaintiff would be at liberty "to consider the entire balance due and owing," and bring suit therefor; and that, upon payment of the stipulated sum, plaintiff would execute and deliver a general release to Smith. Smith undertook to turn over "the first Forty-two ($42.00) Dollars payable under" the agreement to the hospital in which plaintiff was treated for his injuries, in satisfaction of its bill for services.

There was evidence tending to show that, pursuant to the duties of his employment, Smith was on his way to the local post office to procure defendant's mail when the collision occurred. And defendant admitted it supplied fuel for his automobile. Smith did not communicate this information to plaintiff in the negotiations that culminated in the settlement; nor did he so advise his own attorney. Whatever may have been Smith's understanding of the situation, it is clear that plaintiff was led to believe that Smith was not engaged in his master's service when he suffered his injuries, and that he therefore had a right of action against him only. And Smith claimed financial incapacity. He had no insurance, and no means except the salary of $35 per week received from defendant.

After having paid $40 on account of the sum provided under this agreement, Smith advised plaintiff that, for lack

of employment, he could not pay the balance. For the first time he informed plaintiff that he was pursuing his master's business when the accident happened, and this was followed by the submission of his affidavit purporting the facts touching the asserted relationship of *respondeat superior,* and, in turn, the execution and delivery by plaintiff to Smith, under date of October 1st, 1937, of a covenant whereby plaintiff obligated himself not to sue Smith "for or on account of a claim for personal injuries and medical expenses sustained by 'him' arising out of an accident occurring on February 6th, 1937," but reserved to himself "the right and privilege to proceed either in law or in equity, against any other person, firm or corporation for personal injuries and medical expenses sustained by reason of" the mishap.

Defendant's motion for a directed verdict was grounded solely in the claim that plaintiff, by the agreement first made with Smith, "precluded himself from bringing any action against" defendant, in that it constituted an accord and satisfaction. The learned trial judge adopted this view. We deem it to be erroneous.

Conceding it to be the general rule that, to constitute a bar to the original claim, the accord must be fully executed, defendant invokes the principle that, where the agreement of accord and satisfaction exhibits an intent "to accept the new promise as itself a satisfaction of the prior obligation, the satisfaction is complete on the making of the promise,"—citing *Lorentowicz* v. *Bowers,* 91 *N. J. L.* 225. It is said that this common purpose is revealed in the clause of the agreement providing that, in case of default in the payment of a prescribed monthly installment, plaintiff "shall immediately have the right to consider the balance due and owing and bring suit" therefor. We do not entertain this view. The asserted intent is negatived by the provision binding plaintiff to "execute to defendant a General Release of all claims and demands and discontinuance of all pending actions," only in the event of full payment of the stipulated sum. Plaintiff was bound to deliver the release "at such time as the full amount of Seventy-five ($75.00) Dollars is paid." See *McCoy* v. *Milbury,* 87 *Id.* 697.

Moreover, it was plainly within the competency of the parties to abrogate this unexecuted agreement of settlement for unreality of consent, on the hypothesis either of mutual mistake or the concealment of a material fact, *i. e.*, the relationship imposing upon defendant liability to respond in damages for Smith's negligence in the operation of the motor vehicle. The concurrence of the defendant in this joint action was not requisite to remove the bar of the original agreement. Defendant's rights were in nowise prejudiced thereby. The original agreement of settlement was not made for its benefit; nor did it change its position on the faith of it. The doctrine of estoppel is not applicable.

The judgment is accordingly reversed, and a *venire de novo* awarded, with costs.