(No. 62245.

SALLY A. STEWART, Appellant, v. THE VILLAGE OF SUMMIT, Appellee.

*Opinion filed October 17, 1986.*

RYAN, J., dissenting.

Benjamin H. Cohen, of Chicago (Schwartzberg, Barnett & Cohen, of counsel), and Levine, Shifrin & Critz, of Schaumburg, for appellant.

Vincent Cainkar, of Louis F. Cainkar, Ltd., and Roderick J. Bergin and Matthew J. Egan, of Chicago, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Sally A. Stewart, appealed from the judgment of the circuit court of Cook County entered in favor of defendant, the village of Summit, upon allowance of its motion for summary judgment. In this action plaintiff sought to recover damages for injuries suffered when she was struck by a truck driven by defendant's employee, Danny Rankovich. Defendant's liability, if any, arises under the doctrine of *respondeat superior* by reason of the negligence of its employee. The appellate court affirmed in a Rule 23 order (87 Ill. 2d R. 23; 134 Ill. App. 3d 1157), and we allowed plaintiff's petition for leave to appeal (103 Ill. 2d R. 315(a)).

Danny Rankovich was employed by defendant as an emergency medical technician. On September 22, 1979, in response to an emergency call, Rankovich drove his

truck from his home to the police department in order to obtain an ambulance. At the intersection of Archer Avenue and 59th Street, Rankovich's truck collided with the automobile of Andrew J. Kociper. Plaintiff, who was walking across 59th Street on the east side, was struck and injured by Rankovich's truck after it deflected off Kociper's car. Plaintiff was hospitalized for approximately one month, and her medical expenses exceeded $16,500.

After filing this action against Rankovich, Kociper, and defendant, plaintiff, upon payment of $5,000, entered into a covenant not to sue Rankovich. The covenant provides in pertinent part:

"It is understood that the said Danny Rankovich expressly denies any negligence on his part causing or contributing to said accident and any liability therefor, and that this agreement is entered into for the purpose of avoiding litigation and shall not be construed as an admission of liability on his part, and that undersigned hereby expressly reserves the right to sue any other person or persons against whom he may have or assert any claim on account of damages arising out of the above described accident."

The circuit court allowed defendant's motion for summary judgment, holding that because defendant's liability was derivative, based on the doctrine of *respondeat superior*, the covenant not to sue extinguished plaintiff's cause of action against defendant. The appellate court, citing *Holcomb v. Flavin* (1966), 34 Ill. 2d 558, affirmed the judgment.

Since both parties construe the agreement between plaintiff and Rankovich to be a covenant not to sue, this appeal presents the sole question whether the execution of a covenant not to sue defendant's employee, which provides that the "undersigned [plaintiff] hereby expressly reserves the right to sue any other person or

persons against whom he may have or assert any claim on account of damages arising out of the above described accident," serves to extinguish plaintiff's claim against defendant under the doctrine of *respondeat superior*.

Plaintiff contends that this case is governed by section 2(c) of the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1979, ch. 70, par. 302(c)) (Act), which provides:

> "(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater."

Plaintiff contends that this statute explicitly preserves any claim which she might have against defendant and that failure to specifically reserve the claim against defendant did not serve to extinguish it. In the alternative, plaintiff urges, that should this court hold the Act inapplicable, we should hold, in accordance with the opinions of the majority of commentators and the case law in other jurisdictions, that a covenant reserving rights against unnamed tortfeasors does not operate to release those tortfeasors, including employers only secondarily liable. (*Plath v. Justus* (1971), 28 N.Y.2d 16, 268 N.E.2d 117, 319 N.Y.S.2d 433; *Hamburger v. Paterson Tallow Co.* (1939), 122 N.J.L. 457, 5 A.2d 487; *Henry B. Steeg & Associates, Inc. v. Rynearson* (1968), 143 Ind. App. 567, 241 N.E.2d 888; *Dworak v. Olson Construction Co.* (1976), 191 Colo. 161, 551 P.2d 198.) Further, plaintiff argues that prior to the enactment of the Act this court

had not addressed the question whether a covenant not to sue containing a "generic" reservation of rights operates to release any unnamed persons. Plaintiff urges that the disposition of this issue falls between two of our earlier cases—*Holcomb v. Flavin* (1966), 34 Ill. 2d 558 (covenant not to sue employee containing no reservations of rights against others held to extinguish plaintiff's cause of action against employer), and *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298 (covenant not to sue physician employed by hospital containing express reservation of the right to seek recovery from named hospital, held not to bar an action against the hospital).

Finally, plaintiff contends that the covenant not to sue is a contract and should be construed to carry out the intentions of the parties. (*Porter v. Ford Motor Co.* (1983), 96 Ill. 2d 190.) As such, plaintiff urges that the circumstances of this case make it clear that it was the intent of both plaintiff and Rankovich to permit plaintiff to proceed against defendant.

Defendant argues that section 2(c) of the Act is inapplicable to situations involving liability based on *respondeat superior* and that it applies only to "true" joint tortfeasors, all of whom are active "wrongdoers." Citing *Holcomb v. Flavin* (1966), 34 Ill. 2d 558, the facts of which, it contends, are "legally indistinguishable" from those here, defendant argues that its liability was extinguished by plaintiff's execution of the covenant not to sue defendant's employee whose negligence was the basis of defendant's derivative liability. (*Holcomb v. Flavin* (1966), 34 Ill. 2d 558; *Bristow v. Griffitts Construction Co.* (1986), 140 Ill. App. 3d 191.) Defendant argues that only when the covenant includes precise and specific language and the name of the party against whom the plaintiff's rights are reserved is the plaintiff's right to maintain an action against that party preserved. *Edgar*

*County Bank & Trust v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298.

Finally, defendant argues that, even if the Act is found to be applicable, defendant's liability was still extinguished by the covenant not to sue Rankovich. Defendant bases this argument on section 3 of the Act, which provides, in pertinent part, that "[i]f equity requires, the collective liability of some as a group shall constitute a single share." (Ill. Rev. Stat. 1979, ch. 70, par. 303.) Defendant urges that because its liability arose solely under the doctrine of *respondeat superior,* the liability of defendant and Rankovich, its agent, should be measured collectively. As such, since plaintiff has already settled with and received payment from Rankovich, she should not be awarded a double recovery for a single tortious act.

There is a split in the authorities concerning whether recovery from a defendant secondarily liable is barred by a covenant not to sue the active tortfeasors even though the covenant contains a reservation of the right to sue others for damages arising out of the same occurrence. The rationale of one line of authorities holding the action barred is that because the liability of the master or principal is derivative or secondary, exoneration of the servant or agent extinguishes the liability of the master or principal. (See Annot., 92 A.L.R.2d 533 (1963).) Some of the opinions also suggest that the theory serves to avoid circuity of action. We do not agree with defendant that our prior cases require us to hold that plaintiff's claim is so barred.

In *Holcomb v. Flavin* (1966), 34 Ill. 2d 558, this court held that the execution of a covenant not to sue an employee served to extinguish the plaintiff's claim against his employer. The document involved in *Holcomb* was considered by all parties to be a covenant and not a release, but contained no reservation of rights to pursue

plaintiff's claim against others. In *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, the plaintiff executed a covenant not to sue a doctor but specifically reserved the right to pursue his claim against the defendant hospital. In rejecting the defendant's contention that its liability was extinguished, the court said:

"Defendants, citing *Holcomb v. Flavin* [(1966)], 34 Ill. 2d 558, contend that the execution of the covenant not to sue Dr. Acklin, notwithstanding the provision therein that it would not affect plaintiff's claim against his employer, extinguished the defendant hospital's liability and bars plaintiff's action against both defendants. Acknowledging that in *American National Bank and Trust Co. v. The Pennsylvania R.R. Co.* [(1968)], 40 Ill. 2d 186, the court distinguished the covenant not to enforce a judgment from the covenant not to sue in *Holcomb*, on the ground, *inter alia*, that it expressly reserved the covenantor's right to enforce the judgment against another defendant railroad, whereas in *Holcomb* no right of action against the employer was reserved, defendants argue that *Holcomb* controls here and that plaintiff's action is barred.

In *Holcomb* the court pointed out that in those jurisdictions which had held that the covenant not to sue the servant or agent did not bar an action against the master or principal, the instruments had contained express reservations of the covenantor's right to proceed against the covenantee's master or principal. (See also *Steeg and Associates v. Rynearson* [(1968)], 143 Ind. App. 567, 241 N.E.2d 888; *Plath v. Justus* [(1971)], 28 N.Y.2d 16, 319 N.Y.S.2d 433, 268 N.E.2d 117.) The controlling distinction drawn in *American National Bank* applies here, and we hold that the covenant not to sue Dr. Acklin, which contained an express provision that it did not affect plaintiff's right to seek recovery against his employer, did not serve to bar plaintiff's action against either the defendant hospital or Dr. Acklin's co-employee, defendant Augusta Bostick." 57 Ill. 2d 298, 301-02.

It is obvious from the opinion in *Edgar* that the court did not interpret *Holcomb* to hold that the execution of a covenant not to sue an employee effected under all circumstances a release of the employer. *Edgar* makes it clear that the claim against an employer, although based on *respondeat superior*, if reserved, survives the covenant not to sue. This is consistent with the long-established rule that the agreement is the controlling factor and the governing fact to be determined is the intent of the parties. (*City of Chicago v. Babcock* (1892), 143 Ill. 358; *Essington v. Parish* (7th Cir. 1947), 164 F.2d 725.) The provision that the "undersigned hereby reserves the right to sue any other person or persons against whom he may have or assert any claim on account of damages arising out of the above described accident" explicitly and unambiguously demonstrates that the parties intended that the right to sue anyone was all inclusive, with no exceptions made because of the basis of the claim, so long as it arose out of the same occurrence.

We conclude that the parties intended that plaintiff's right to sue all persons or entities other than Rankovich survive the execution of the covenant, and in allowing defendant's motion for summary judgment, the circuit court erred.

Because of the conclusion reached we need not and do not reach the question whether the provisions of section 2(c) of the Act are applicable here. We note parenthetically that the provisions of section 2(c) indicate that the public policy of this jurisdiction is that no instrument purporting to terminate the liability of a tortfeasor serves to discharge any other tortfeasor from liability for the same injury unless its terms so provide. Our prior decisions are consistent with that policy.

For the reasons stated, the judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court of Cook County for further

proceedings consistent with this opinion.

*Reversed and remanded.*

JUSTICE RYAN, dissenting:

I dissent from the opinion of the majority for the following reasons.

In *Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 197, this court held that a release that released the payer "and all other persons, firms, and corporations, both known and unknown" was not sufficient to release a joint tortfeasor who was not specifically identified therein. However, this case holds that a covenant not to sue which reserves the right to bring a claim against "any other person or persons against whom [the claimant] may have or assert any claim" is sufficient to preserve a claim against any other joint tortfeasor. In other words, unlike a release, the reservation need not specifically identify the tortfeasor against whom the cause of action is sought to be reserved. The majority relies upon *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, but in that case the covenant specifically named the tortfeasor against whom the one giving the covenant was reserving the right to make a claim. I think this court should be consistent in construing the language of releases and covenants. We should not condemn the use of general language and require a specific identification when to do so favors the claimant, but not when it would benefit a defendant.

The rationale in support of the holding in this case, as stated in the majority opinion, is that the reservation in the covenant unambiguously demonstrates that the parties intend that the right to sue anyone was all inclusive, and that the parties intended that the right to sue anyone other than Rankovich survive the execution of the covenant. This is the same argument as to the effect of the release, and the intent of the parties executing the

same, stated in my dissent in *Alsup. Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 203 (Ryan, C.J., dissenting).

In addition to the above inconsistency, I have a further concern about the inequitable result to which the holding of this case may lead. The tortfeasor primarily responsible for the plaintiff's injury in this case was absolved of all liability on payment of $5,000. The plaintiff may now proceed against the village of Summit for damages in whatever amount may be supported by the evidence. The responsibility of the village is only derivative. It would not be liable at all if it were not for the wrongful act of Rankovich, the driver of the vehicle whose negligence caused the accident.

The same result will flow from the construction the majority has placed on this covenant in other cases where the wrongdoer who causes the injury covenants out, leaving another tortfeasor unprotected. This will be the case in those situations where the formerly recognized relationships of active/passive and primary/secondary existed between the tortfeasors. Formerly, the passive tortfeasor, the one secondarily responsible, would be protected by his right of indemnity against the active tortfeasor, or the one primarily responsible. (*Carver v. Grossman* (1973), 55 Ill. 2d 507.) However, in *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, this court recently held that the need for implied indemnity based upon the active/passive or primary/secondary relationship between tortfeasors no longer exists, and the remedy of the less culpable must be found through contribution. Under section 2(d) of the Contribution Act (Ill. Rev. Stat. 1979, ch. 70, par. 302(d)), however, the tortfeasor who settles is discharged from all liability for any contribution to any other tortfeasor. The net result is that the passive or secondarily responsible individual will be saddled with the entire amount of the judgment, subject only to the

right to have the nominal amount paid for the covenant offset against the amount of the judgment, as is provided in section 2(c) of the Act (Ill. Rev. Stat. 1979, ch. 70, par. 302(c)). In summary, the open-ended construction given to the covenant by the majority opinion, coupled with our previous decision in *Allison* and the provisions of the Contribution Act, will lead to some very inequitable results which permit the party actually causing the injury to be absolved by paying a nominal amount, while requiring the party who was only nominally responsible to shoulder the entire burden. This is just as inequitable as was the former common law rule of no contribution among joint tortfeasors.

I wish to recognize that *Allison* left open and undecided the situation which apparently would cover the case at bar by stating, "[W]e do not here decide whether a tortfeasor whose liability is vicariously imposed by policy of law rather than culpability of conduct may shift the whole of its liability to those parties actually and solely at fault." (*Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 35.) Whether or not indemnity is still a viable remedy for factual situations such as those now before us is a case for another day. When that day comes we must be careful to preserve the right of implied indemnity for those who may be only vicariously responsible.

As noted in *Allison*, the law of implied indemnity developed in a wide area and covered cases involving active/passive and primary/secondary concepts, as well as cases involving vicarious liability imposed by law. The line of demarcation between those areas in which implied indemnity, by virtue of *Allison*, is no longer permissible and those in which it is, is not easily defined. Some parties falling into a category formerly designated as passive negligence, who are now denied indemnity by virtue of *Allison* and contribution under section 2 of the Contribution Act, will actually be no more culpable than

some who are properly said to be vicariously liable.

Many of these comments more appropriately should have been voiced as a dissent to the holding of *Allison*. However, the full potential for unjust and inequitable results became apparent in considering the broad construction given the covenant in this case in conjunction with our holding in *Allison* and coupled with sections 2(c) and 2(d) of the Contribution Act.

There have been dramatic changes in our tort law in recent years. *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, altered our thinking about contribution among tortfeasors. This was followed by the Contribution Act (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*). Soon thereafter we abandoned contributory negligence and adopted "pure" comparative negligence in *Alvis v. Ribar* (1981), 85 Ill. 2d 1. Since these changes have been made we have, on an *ad hoc* basis, been trying to fit our new doctrines into the contours of our old tort law and vice versa. In the case now before us the majority opinion, in arriving at its construction of the covenant, relied entirely on cases decided before *Skinner*. We have been developing a body of tort law in a piecemeal manner, case by case, with no comprehensive plan. As a consequence we find such inequities as is evidenced by the result that may flow from the opinion in this case.

I discussed in my dissent in *Alvis v. Ribar* that there existed an interrelationship of the various segments of our tort law. (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 42-43 (Ryan, J., dissenting.).) I concluded then, and I believe now, that legislative action is required to maintain a semblance of balance. The legislature is not restricted to deciding one issue at a time on a case-by-case basis, but can approach the problem on a much broader scope. Without such an approach we will zigzag our way through the field of torts with such inequities as I see

flowing from this case and from *Allison*. No one seems to get very excited about such results unless he happens to be the innocent party who is stuck with the large damage award.

For the above reasons, I dissent.