DORIS FRAZER *et al.*, Appellees, v. A. F. MUNSTERMAN, INC., Appellant.

*Opinion filed July 20, 1988.*

STAMOS, J., took no part.
MILLER, J., specially concurring.
RYAN, J., dissenting.

Wayne B. Giampietro and Gregory N. Freerksen, of Chicago (Poltrock & Giampietro, of counsel), for appellant.

Sweeney & Riman, Ltd., of Chicago (John S. Huntley and Gary L. Fogle, of counsel), for appellee Beck Corporation.

Kralovec, Marquard, Doyle & Gibbons, Chartered, of Chicago (Nancy Jo Arnold, of counsel), for appellee Ring Brothers, Inc.

Griffin & Fadden, Ltd., and Phelan, Pope & John, Ltd. (Bradley B. Falkof and Peter C. John, of counsel), all of Chicago, for appellee DICO, Inc.

Lord, Bissell & Brook, of Chicago (Richard F. Johnson, Hugh C. Griffin and Diane I. Jennings, of counsel), for appellee Croft Trailer & Hitch Company.

JUSTICE WARD delivered the opinion of the court:

The question presented on this appeal is whether the distributor of a product found guilty of negligence in a personal injury action can maintain a third-party action for implied indemnity against the manufacturer and wholesaler of a product on the grounds of negligence, strict products liability or breach of an implied warranty of merchantability.

The plaintiff, Doris Frazer, brought an action in the circuit court of Du Page County for personal injuries sustained when a trailer, which was attached to the back of a pickup truck ahead of her, disengaged and collided with the car she was driving. The plaintiff sued Keith Allen, the operator of the pickup truck; A. F. Munsterman, Inc., d/b/a Wheaton Rental Center (Munsterman), the owner of the trailer and the trailer hitch; Robert Sosnowski, one of Munsterman's employees who alleg-

edly helped Allen attach the trailer to his truck; the Beck Corporation (Beck), the manufacturer of the trailer; Iris Dougherty and the George Croft Trust, d/b/a Croft Trailer and Hitch Company (Croft), the seller to Munsterman of the trailer hitch; and Ring Brothers, Inc. (Ring Brothers), the company which sold the trailer hitch to Croft. Munsterman filed a third-party action against Allen, Croft, Ring Brothers, Beck, and Dico, Inc. (Dico), which manufactured the trailer's brake system, for contribution under "An Act in relation to contribution among joint tortfeasors" (Contribution Act) (Ill. Rev. Stat. 1979, ch. 70, par. 302) and for indemnity predicated on the common law doctrine of implied indemnity. The third-party complaint asserted three grounds for recovery: negligence, strict products liability and breach of the implied warranty of merchantability under section 2—314 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 2—314).

After the plaintiff had entered into a settlement with the defendants, Croft, Ring Brothers, Beck and Dico, the trial court dismissed the counts of Munsterman's complaint claiming contribution pursuant to sections 2(c) and (d) of the Contribution Act (Ill. Rev. Stat. 1979, ch. 70, pars. 302(c), (d)), and severed Munsterman's third-party action from the primary action, that is, the plaintiff's personal injury suit. On the plaintiff's action against Allen, Sosnowski and Munsterman, the court directed a verdict against Munsterman on the strict products liability count of the complaint, and the jury found in favor of Allen and Sosnowski, and against Munsterman, on the negligence count. The court then dismissed Munsterman's third-party complaint, stating that actions for implied indemnity were abolished upon the adoption of contribution among joint tortfeasors. (See Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.; Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill.

2d 1.) Munsterman appealed the dismissal of its claims against Croft, Beck, Ring Brothers and Dico for indemnification, and the appellate court affirmed (145 Ill. App. 3d 1092). We granted Munsterman's petition for leave to appeal under our Rule 315 (107 Ill. 2d R. 315).

On April 15, 1980, the defendant, Keith Allen, was given the use of a trailer by the Wheaton Rental Center, which is owned and operated by the defendant, A. F. Munsterman, Inc. (The terms of the use are not clear from the record.) Allen attached the trailer to the back of his pickup truck with a "pintle hook/trailer hitch" and two "safety chains," both of which he obtained from Munsterman. Allen also attached a third chain between the truck and the trailer which was designed to activate the brakes on the trailer in the event that it became detached from the towing vehicle. Shortly after leaving Munsterman's premises, the trailer broke free from Allen's pickup truck as a result of the trailer hitch and safety chains' disengaging from the truck as it was being pulled along the highway. The detached trailer veered into oncoming traffic, colliding with the plaintiff's auto and causing her injuries.

The plaintiff originally had filed an action in the circuit court of Du Page County against only Munsterman, Sosnowski and Allen, charging each with separate acts of negligence. Frazer alleged, *inter alia*, that Munsterman was negligent in providing Allen with a pintle hook/trailer hitch which it knew, or should have known, was in an unreasonably dangerous condition, and in providing Allen with a trailer with attached safety chains and "S" hooks which it knew, or should have known, were inadequate to secure the trailer to the rear of Allen's truck. The complaint also set out a strict products liability claim against Munsterman alleging that defects in both the trailer and trailer hitch, existing at the time they left

Munsterman's control, rendered them unreasonably dangerous.

Munsterman brought a third-party action against Allen; the manufacturer of the trailer, Beck; the manufacturer of the trailer's brake system, Dico; the seller to Munsterman of the trailer hitch, Croft; and the seller of the trailer hitch to Croft, Ring Brothers. The complaint sought both contribution under the Contribution Act (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*), and indemnity predicated on a common law theory of implied indemnity. Against Allen, Munsterman sought recovery under negligence principles and asserted three grounds for recovery against the other third-party defendants: negligence, strict products liability, and breach of an implied warranty of merchantability under section 2—314 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 2—314). The plaintiff subsequently amended her complaint to make all of the third-party defendants, except Dico, direct defendants. She asserted negligence and strict products liability as grounds for recovery.

When defendants Croft, Beck, Ring Brothers, and Dico entered into a settlement agreement with the plaintiff, under which she was paid $60,000 in return for a release of all claims against them arising out of the April 15 occurrence, they moved to dismiss Munsterman's third-party action. They asserted that Munsterman's claims for contribution should be dismissed pursuant to sections 2(c) and (d) of the Contribution Act (Ill. Rev. Stat. 1979, ch. 70, pars. 302(c), (d)). Section 2(c) of the Act provides:

> "When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the re-

covery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." (Ill. Rev. Stat. 1979, ch. 70, par. 302(c).)

Under section 2(d) of the Act, a tortfeasor who settles with the plaintiff in "good faith" pursuant to section 2(c) of the Act is discharged from all liability for contribution to other tortfeasors. Ill. Rev. Stat. 1979, ch. 70, par. 302(d).

The third-party defendants also argued that Munsterman's complaint failed to state a cause of action for indemnity. They argued that after the adoption of contribution among tortfeasors in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, and the subsequent enactment of the Contribution Act, actions for implied indemnity are no longer recognized.

The trial court held that the settlement was in "good faith" and granted in part the third-party defendants' motions, striking the contribution counts of Munsterman's complaint. The court, however, reserved ruling on the motions to dismiss the indemnity counts and severed Munsterman's third-party action from the underlying action brought by Frazer.

In the plaintiff's action against Munsterman, Sosnowski and Allen, the trial court directed a verdict against Munsterman on the strict liability count of the complaint. The court found that the trailer hitch Munsterman provided Allen was in an unreasonably dangerous condition at the time it left Munsterman's control, and that the defect was a proximate cause of the plaintiff's injuries. The jury found in favor of Allen and against Munsterman on the negligence counts of the plaintiff's complaint, and awarded the plaintiff $365,338.03 in damages. Sosnowski was dismissed after he testified that he had nothing to do with the attaching

of the trailer to Allen's truck. The trial court reduced the plaintiff's award to $305,338.03 pursuant to section 2(c) of the Contribution Act (Ill. Rev. Stat. 1979, ch. 70, par. 302(c)), which, as shown above, provides that any judgment paid by nonsettling defendants to the plaintiff is reduced by the amount of an earlier settlement between the plaintiff and the other defendants.

After trial, the court dismissed the remaining counts of Munsterman's third-party complaint on the ground that actions for implied indemnity, regardless of the theory presented for recovery, are no longer recognized following the adoption of contribution among joint tortfeasors in this State.

Munsterman appealed the dismissal of its indemnity claims, and the appellate court affirmed (145 Ill. App. 3d 1092). The court concluded, too broadly, as we shall see, that all actions for indemnity, except actions predicated on a contract for indemnity, were abolished upon the recognition of a right of contribution. The court also held that Munsterman's claims for indemnity based on breach of the implied warranty of merchantability under section 2—314 of the Uniform Commercial Code were in essence "claim[s] for contribution which [were] correctly dismissed in light of plaintiff's settlement with Croft, Ring and Beck." (145 Ill. App. 3d at 1099.) As stated, we granted Munsterman's petition for leave to appeal under our Rule 302 (107 Ill. 2d R. 302(a)).

Indemnity and contribution are mutually exclusive remedies for allocating a plaintiff's damages among joint tortfeasors with liability to the plaintiff. Indemnity allows a defendant who satisfies a judgment for which he and another tortfeasor or tortfeasors are jointly and severally liable to recover from the other tortfeasor or tortfeasors the entire amount he was obligated to pay. (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 349; *Gulf, Mobile & Ohio R.R. Co. v. Arthur*

*Dixon Transfer Co.* (1951), 343 Ill. App. 148, 152-54.) To have the right to indemnity there must have been a pre-tort relationship between the guilty parties and a qualitative difference in their conduct in the occurrence. *Van Slambrouck v. Economy Baler Co.* (1985), 105 Ill. 2d 462, 469; *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 349.

The right to indemnification may arise from contract (see *Westinghouse Electric Elevator Co. v. La Salle Monroe Building Corp.* (1947), 395 Ill. 429), or from situations in which a promise to indemnify can be implied from the relationship among the tortfeasors. Appel & Michael, *Contribution Among Joint Tortfeasors in Illinois: An Opportunity for Legislative & Judicial Cooperation,* 10 Loy. U. Chi. L.J. 169, 171 & n.8 (1979); M. Polelle & B. Ottley, Illinois Tort Law 674-75 (1985).

"Implied indemnity" is based on principles of restitution: "a contract implied in law arising from the legal obligation of an indemnitee to satisfy liability caused by actions of his indemnitor." (*Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 28; F. Woodward, Quasi Contracts §259 (1913); Restatement (Second) of Torts §886B, comment *c*, at 345 (1979).) The fundamental premise for the cause of action is that the indemnitee, although without fault in fact, has been subjected to liability solely because of the legal relationship with the plaintiff or a nondelegable duty arising out of common or statutory law. (See 1 J. Dooley, Modern Tort Law §26.07, at 651 (1982).) For example, an employer held liable for the torts of his employee under the doctrine of *respondeat superior* is generally allowed indemnification from the employee, assuming the employer did not participate in the wrongful conduct. (*Embree v. DeKalb Forge Co.* (1964), 49 Ill. App. 2d 85.) Too, a landowner held responsible for failure to perform the duty imposed by law to maintain his premises in a reasonably safe condition is allowed indem-

nity from the negligent party who created the dangerous condition. See *Rovecamp v. Central Construction Co.* (1964), 45 Ill. App. 2d 441.

Different from indemnity, contribution distributes the loss among tortfeasors by requiring each to pay a proportionate share based on the relative fault of the parties. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 624.) Although the common law permitted indemnity in certain limited situations, it prohibited contribution among joint tortfeasors. (*Merryweather v. Nixan* (1799), 8 T.R. 186, 101 Eng. Rep. 1337.) The prohibition was based primarily on the notion that courts should not be used to assist wrongdoers. *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 363-64.

As a reaction to the common law's prohibition of contribution, the right to implied indemnity expanded beyond the original notion of an indemnitee who himself was without personal fault. (*Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 30; *Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 292.) Under what became known as the doctrine of active/passive negligence, courts recognized a right of " 'equitable' implied indemnity based upon the relative fault of the parties." (*Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 30.) Where the conduct of one tortfeasor was considered to be the primary cause of the damages of the plaintiff, that is, where there was "active" negligence, and the conduct of the other was considered to be a secondary cause of the injury, or where there was "passive" negligence, the passively negligent party was permitted to shift the entire burden of the plaintiff's loss to the actively negligent tortfeasor. See *Sargent v. Interstate Bakeries, Inc.* (1967), 86 Ill. App. 2d 187; *Reynolds v. Illinois Bell Telephone Co.* (1964), 51 Ill. App. 2d 334.

Typically, it was the "active" negligence of one party that created a dangerous condition which caused the

plaintiff's injury, and the other party's negligence amounted to no more than the failure to discover and correct it. (See *Chicago & Illinois Midland Ry. Co. v. Evans Construction Co.* (1965), 32 Ill. 2d 600, 604; W. Prosser & W. Keeton, Torts §51, at 343 (5th ed. 1984); Restatement of Restitution §95 (1937); Restatement (Second) of Torts §886B(1)(d) (1979).) Thus, where the distributor of a product was held liable to a vendee for injuries caused by defects in the product, it was generally allowed indemnity against the manufacturer of the product if the distributor had been held liable for not discovering and correcting the defective condition of the product. (See Restatement of Restitution §93(1) (1937); Restatement (Second) of Torts §886B, comment *c* (1979); V. Schwartz, Comparative Negligence §16.9, at 287 (2d ed. 1986); *Gulf, Mobile & Ohio R.R. Co. v. Arthur Dixon Transfer Co.* (1951), 343 Ill. App. 148, 153.) The rationale for the cause of action was that the manufacturer was considered "actively" negligent in creating the defective product, and the negligence of the distributor in failing to inspect and to discover the defect was regarded as "passive." See V. Schwartz, Comparative Negligence §16.9, at 287 (2d ed. 1986); 3A L. Furmer & M. Friedman, Products Liability §44.04, at 15–101.

Upon the recognition of actions under strict products liability, which was first recognized by this court in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, the doctrine of implied indemnity was further extended. In *Suvada,* this court recognized under strict liability a right to indemnity in favor of the negligent operator of a tractor against the manufacturer of the brake system of a tractor. The plaintiffs in *Suvada* purchased a used, reconditioned tractor unit from the defendant, White Motor Company. While the tractor was being operated, its brake system failed, causing it to collide with a bus, injuring passengers. After making a settlement of the neg-

ligence claims of the bus passengers, the plaintiffs brought an action for indemnity against White and the manufacturer of the tractor's brake system, Benedix-Westinghouse Automotive. In recognizing a cause of action in strict products liability, this court stated that where a defective condition in a product makes it unreasonably dangerous to the user, the public interest in human life and health required "imposing the loss upon the one creating the risk and reaping the profit." 32 Ill. 2d at 619.

The court also held that the plaintiffs properly stated a claim for indemnity, although their liability for damage to the bus and injuries to the bus passengers was based on their negligent operation of the tractor. In rejecting the contention that the plaintiffs' negligence would bar their indemnity action, the court said:

"It does not follow *** that plaintiff's [sic] negligence will, as a matter of law, *** prevent them from seeking indemnity from [the manufacturer]. Dean Prosser in the chapter of his book covering joint tort-feasors (Prosser, Law of Torts, chap. 8. 3d ed. (1964),) points out, 'There is an important distinction between contribution, which distributes the loss among the tort-feasors by requiring each to pay his proportionate share, and indemnity, which shifts the entire loss from one tort feasor who has been compelled to pay it to the shoulders of another who should bear it instead. The two are often confused, and there are many decisions in which indemnity has been allowed under the name of "contribution." *** The principle is not, however, limited to those who are personally free from fault. A similar rule has been applied to indemnify against a supplier of goods when a retailer or user of goods incurs liability by reason of negligent reliance upon his proper care.' " 32 Ill. 2d at 624.

The court stated, however, that indemnity in the context of actions in strict products liability did not involve the fault-weighing analysis that was used under the ac-

tive/passive negligence doctrine: "To require proof that [the manufacturer] was actively negligent would be the antithesis of strict liability." 32 Ill. 2d at 624.

In *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, this court extended the reach of the holding of *Suvada* to members in the distributive chain of a defective product who were sued in strict liability. In *Liberty*, the manufacturer of an adjustable work platform, having settled strict liability actions for personal injuries brought against it, filed an indemnity action against the manufacturer of a defective component part that was incorporated into the work platform. The defendant contended that it and the platform manufacturer should be treated as joint tortfeasors as to the injured party and no indemnity should be allowed, as the third-party plaintiff's negligence was active. Rejecting the argument, this court stated that the negligence of the plaintiff was irrelevant, as the action against the third-party defendant was based on strict products liability. The court stated that in such a case indemnity was available except to a third-party plaintiff who misuses the product or assumes the risk of its use. (62 Ill. 2d at 83.) Thus, even an "actively" negligent tortfeasor could proceed in indemnity against the manufacturer of a defective product if the third-party defendant, the manufacturer, had been found liable under strict products liability.

This court struck down the rule prohibiting contribution among joint tortfeasors in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, upon concluding there was "no valid reason for [its] existence *** and many compelling arguments against it" (70 Ill. 2d at 13). In *Skinner*, the complaint alleged that an injection molding machine malfunctioned and injured the plaintiff. The defendant manufacturer filed a third-party action against the plaintiff's employer seeking con-

tribution for such amount as would be commensurate with the degree of misconduct attributable to the employer. It was held that if the employer had misused the molding machine or had assumed a known risk of the product's use, and if either factor contributed to cause the employee's injury, the manufacturer had a proper claim for contribution. The liability for the third-party plaintiff's damages was to be apportioned on the basis of the "relative degree to which the defective product and the employer's [conduct] *** contributed to cause plaintiff's injuries." 70 Ill. 2d at 16.

Following the decision in *Skinner*, the General Assembly passed "An Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*), which "codified and clarified" *Skinner*. (See *Stephens v. McBride* (1983), 97 Ill. 2d 515, 521-22.) The Act provides:

"[W]here 2 or more persons are subject to liability in tort arising out of the same injury to person or property, *** there is a right of contribution among them ***." Ill. Rev. Stat. 1979, ch. 70, par. 302(a).

"The pro rata share of each tortfeasor shall be determined in accordance with his relative culpability." Ill. Rev. Stat. 1979, ch. 70, par. 303.

It was after deciding *Skinner* that this court adopted a form of pure comparative negligence and abolished the common law rule that any contributory negligence of the plaintiff operated as a complete bar to recovery. (*Alvis v. Ribar* (1981), 85 Ill. 2d 1.) The court judged that the concept of comparative negligence "produces a more just and socially desirable distribution of loss demanded by today's society." 85 Ill. 2d at 17.

The impact of *Skinner*, the Contribution Act, and *Alvis* was recognized in *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26. There this court held that, in light of the adoption of contribution and comparative fault, actions

for indemnity based on the notion of "active/passive negligence" should no longer be recognized:

"[I]ndemnity implied by an active-passive distinction, like the no-contribution rule itself, [is] inequitable. *** [T]he doctrine does not mete out complete justice since, by definition, it shifts all costs of liability to only one of two or more parties actually at fault [citations]. Active-passive indemnity simply does not comport with the governing principle in this jurisdiction that the costs of accidental injury are to be apportioned in accordance with the relative fault of all concerned in the action. [Citation.]

* * *

In *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 27, the court determined that total justice can only be attained where the law 'apportions damages according to the relative fault of the parties.' *** Having adopted comparative negligence and the principles of apportioning rather than affixing liability, not only in *Alvis*, but also in *Skinner* and by the Contribution Act, the need for implied indemnity based upon an active-passive distinction has *** evaporated." 113 Ill. 2d at 31, 34.

This court in *Allison*, however, stated explicitly that it was expressing no opinion on the continued viability of actions for implied indemnity where one party has been held vicariously liable for the conduct of another, as in the case of an employer being held for the act of an employee, or where there are claims for indemnity "premised upon an underlying action regarding a defective product" (113 Ill. 2d at 27). What we consider here is whether a claim for indemnity based upon such an underlying action can be maintained where the one seeking indemnity was found negligent in the underlying action. The question involving vicarious or derivative liability of the one claiming indemnity will not be considered.

Munsterman's claim for indemnity on the ground of the claimed negligence of the third-party defendants must fail. Munsterman itself was negligent. This court in

*Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 31, in abolishing indemnity on the basis of active/passive negligence, stated:

> "[G]overning principle[s] in this jurisdiction [dictate] that the costs of accidental injury are to be apportioned in accordance with the relative fault of all concerned in the action."

Munsterman was found by the jury to be negligent in that it knew or should have known of a dangerous defect in the product. It would be unfair for it to be able, through an action of implied indemnity, to shift the entire loss to other defendants when its own negligence contributed to cause the plaintiff's injury.

Munsterman argues further that in any event implied indemnity should be retained as to a member or members in the distributive chain for actions by it or them on strict products liability. Munsterman says that the policy consideration which motivated the adoption of strict products liability was the protection of the public from defective products. This objective is accomplished, according to Munsterman, by requiring the manufacturer to bear full responsibility for losses caused by a defective product though other members of the distributive chain also may be held liable. Munsterman claims that placing the full burden of the loss on the manufacturer acts as an incentive for manufacturers to eliminate or correct defects in products, which they are in the best position to do. It says that "upstream" actions for implied indemnity based on strict products liability implement this policy by ultimately tracing liability back to the manufacturer so that it will bear the full burden of the loss caused by a defective product.

Munsterman claims that this policy objective will be thwarted by the application of the settlement provisions of the Contribution Act. Munsterman asserts that under section 2(d) of the Act (Ill. Rev. Stat. 1979, ch. 70, par.

302(d)), a strictly liable manufacturer can escape a portion of its potential liability by making a settlement with the injured party. Section 2(d) provides that a defendant who settles with the plaintiff is discharged from all liability for contribution to the other tortfeasors. If a manufacturer settles with the plaintiff, lower, or downstream, members of the distributive chain who are also to be held liable under the doctrine of strict products liability must bear the burden of paying the balance of the judgment. This is because the amount of the settlement reduces the judgment to be paid by a nonsettling defendant, not the settling defendant's degree of fault. (See Ill. Rev. Stat. 1979, ch. 70, par. 302(c).) An unreasonably low settlement, therefore, results directly in an increase of the nonsettling defendant's liability, and consequently, the manufacturer is unjustly enriched to the extent that the nonsettling party is forced to satisfy a judgment in excess of the extent of its fault in causing the loss. Munsterman claims that allowing a manufacturer to shift any portion of the liability to an intermediate distributor will reduce the manufacturer's incentive to produce safe products and thus undermine the policy underlying strict products liability.

It also argues that even if the negligence of an intermediate party in the chain of distribution contributes to cause the loss, indemnity should be allowed against the manufacturer. Munsterman says that it is "conceptually impossible" to weigh or compare the negligent acts of an intermediate seller with those of a strictly liable manufacturer because the manufacturer's liability does not rest on fault, but solely on the condition of the product. Without a common denominator to compare the relative fault of the parties, Munsterman argues, principles of contribution, which are based on a comparison of degrees of fault, are inapplicable.

This is particularly true, it says, where the indemnitee's negligence consists solely in failing to inspect a product and discover its defect. Munsterman observes that while this court in *Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104, did partially apply comparative negligence principles to a strict liability action, it did not adopt a full comparative fault rule for strict liability cases. The court excepted from conduct that reduces recovery a consumer's failure to " 'inspect,' 'discover,' or 'guard against' a defective product." (97 Ill. 2d at 118.) Munsterman contends that because a defendant in a strict liability action cannot reduce its responsibility by asserting the contributory negligence of the injured party/plaintiff in failing to inspect the product, a defendant should likewise be unable to do so by pointing to the negligence of a member in the chain of distribution such as Munsterman here.

In short, Munsterman's contention is that indemnity should be allowed consistent with the holding of this court in *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77—that is, an indemnitee, even though negligent, should be allowed indemnity as long as the indemnitee did not misuse the product or assume the risk of its use. We disagree.

There is nothing in the policy underlying strict liability to require that the manufacturer of a defective product bear the entire loss in situations where the negligence of a distributor contributes to causing the loss or harm. The imposition of strict liability was not intended to make the manufacturer an absolute insurer of the product, requiring it to bear the full burden of damages resulting from not only the defective product but from the contributing fault of other parties as well. See *Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104, 111; *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 85.

It should be borne in mind that the rule of indemnification recognized by this court in *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, in the context of strict products liability, was adopted in part to ameliorate the harshness of the rule prohibiting contribution. The court considered that the negligence of the indemnitee should not be taken into account in the case of a defendant manufacturer, held to strict liability, because the result might be the manufacturer's total avoidance of responsibility for the defective product. This is because if the injured person sued and recovered from the immediate seller of the defective product, the manufacturer, because of the then-existing rule against contribution, would be free from liability if the seller were denied indemnity. (See *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 82.) With the adoption of contribution, however, if the negligent conduct of the intermediate seller played a role in proximately causing the plaintiff's injuries, there is no reason that the negligent conduct should be not be compared with the conduct of the manufacturer and the responsibility for damages shared.

Requiring an apportionment of liability between a strictly liable manufacturer and a negligent distributor of the product will not, as Munsterman contends, undermine the policy considerations underlying the adoption of strict products liability. The policy basis for strict products liability is to almost insure a consumer's recovery in the case of a defective product. This policy is fulfilled by freeing a plaintiff from the necessity of proof of privity and negligence and by imposing joint and several liability upon the defendants in the distributive chain. (See *Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104; *Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289.) "When the economic loss of the user has been imposed on a defendant in a strict liability action the policy consider-

ations of *Suvada* are satisfied and the ordinary equitable principles governing the concepts of indemnity or contribution are to be applied." *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 14.

Munsterman observes correctly, however, that this court in *Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104, involving a strict liability action, concluded that even if the injured plaintiff negligently failed to discover a defect in a product, his recovery would not be reduced under the principles of comparative fault; only misuse or assumption of the risk of the product would reduce the manufacturer's liability. Munsterman argues that here, like in *Coney*, its negligence should not be considered and then bar its recovery in indemnity. But as we have just stated, the policy considerations underlying strict liability is to insure, except for misuse and assumption of risk, a consumer's full recovery. Different policy considerations underly the apportionment of damages between joint tortfeasors than those between a defendant and the injured party. This was illustrated by this court's decision in *J. I. Case Co. v. McCartin McAuliffe Plumbing & Heating, Inc.* (1987), 118 Ill. 2d 447, which in its reasoning rejects Munsterman's argument that we now should follow *Coney*. There the court allowed a manufacturer, the defendant in a strict liability action, to bring a contribution claim based on the negligence of a third party, an employer. (Its employee had sued the manufacturer in a strict liability suit.) This court rejected the argument that only misuse and assumption of the risk could form the basis for a claim for contribution against a co-tortfeasor. In concluding this, the court stated:

" '[T]he doctrines of contribution and comparative fault must be viewed in distinction from one another. The policy considerations which are reviewed in applying comparative fault principles between an injured plaintiff and a defendant whose liability is premised on strict liability

rules are not the same as those embodied in the Contribution Act, which allows contribution based on fault, however defined, among those whose conduct contributed to cause the injury.' *Pipes v. American Logging Tool Corp.* (1985), 139 Ill. App. 3d 269, 273." 118 Ill. 2d at 463.

The holding in *Case* illustrates that in strict liability actions the principle of comparative fault is applicable to joint tortfeasors. Thus, here the distributor of a product who negligently failed to inspect for defects in the product cannot under strict liability recover in indemnity from the manufacturer. We would observe that a majority of the courts in other jurisdictions that have considered the issue have held that a negligent failure to inspect and discover a product defect by an intermediate seller bars a claim for indemnity from the manufacturer. *State Mechanical, Inc. v. Liquid Air, Inc.* (Alaska 1983), 665 P.2d 15; *Pearson Ford Co. v. Ford Motor Co.* (1969), 273 Cal. App. 2d 269, 276, 78 Cal. Rptr. 279, 284; *Rowland Truck Equipment, Inc. v. Everware Products, Inc.* (Fla. App. 1985), 468 So. 2d 393, 394; *Kennedy v. City of Sawyer* (1980), 228 Kan. 439, 459, 618 P.2d 788, 802; *Tolbert v. Gerber Industries, Inc.* (Minn. 1977), 255 N.W.2d 362, 367-68.

To employ the hallowed expression, there is no merit to Munsterman's assertion that it is not "conceptually possible" to apportion liability between a strictly liable manufacturer of a product and a negligent distributor. This court has repeatedly rejected this contention. (See *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1.) Courts have overwhelmingly held that comparative fault principles should be used to apportion liability between tortfeasors even when liability for one rests on strict liability and liability for the other on negligence. See *Duncan v. Cessna Aircraft Co.* (Tex. 1984), 665 S.W.2d 414, 424; *Houdaille Industries, Inc. v. Edwards* (Fla. 1979), 374 So. 2d 490, 493-94;

*Safeway Stores, Inc. v. Nest-Kart* (1978), 21 Cal. 3d 322, 328-29, 146 Cal. Rptr. 550, 553, 579 P.2d 441, 444; *Iowa Electric Light & Power Co. v. General Electric Co.* (Iowa 1984), 352 N.W.2d 231, 237; *Vertecs Corp. v. Reichhold Chemicals, Inc.* (Alaska 1983), 661 P.2d 619; *Cartel Capital Corp. v. Fireco of New Jersey* (1980), 81 N.J. 548, 566, 410 A.2d 674, 683; see also C. Heft & C. Heft, Comparative Negligence Manual ch. 4A, §190, at 26 (1971 & Supp. 1987); H. Woods, Comparative Fault §13:12, at 272 (2d ed. 1987).

As the supreme court of California put it in *Safeway Stores, Inc. v. Nest-Kart* (1978), 21 Cal. 3d 322, 331, 146 Cal. Rptr. 550, 551, 579 P.2d 441, 446:

> "the suggested difficulties are more theoretical than practical, and experience in other jurisdictions demonstrates that juries are fully competent to apply comparative fault principles between negligent and strictly liable defendants."

Munsterman's assertion that indemnity is required to act as a check against the possibility of a manufacturer settling for an insufficient amount and thereby causing a nonsettling tortfeasor to bear a disproportionately greater share of the damages is not convincing. A party who does not enter into a settlement agreement is protected under section 2(d) of the Contribution Act (Ill. Rev. Stat. 1979, ch. 70, par. 302(d)), which provides that only settlements in "good faith" bar claims for contribution by settling defendants.

The record shows that Munsterman filed objections challenging the good faith of the settlement by the third-party defendants. It then withdrew the objections as to all of the defendants, except Dico, whose settlement the trial court found to have been in good faith. Munsterman does not raise any question, nor did it in the appellate court, as to the "good faith" of the specific settlement here. Its complaint here is in the abstract or hypothetical.

Finally, we hold that the trial court was correct in dismissing Munsterman's claims for indemnity based on an asserted breach of the implied warranty of merchantability under section 2—314 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 2—314). Munsterman states that under section 2—715 of the Code a buyer may recover consequential damages resulting from the seller's breach of the warranty of merchantability (Ill. Rev. Stat. 1979, ch. 26, par. 2—314), which includes "any *** reasonable expense incident to the *** breach." (Ill. Rev. Stat. 1979, ch. 26, par. 2—715(1).) It says that under section 2—715, the defendants' breach of the warranty of merchantability entitles it to recover attorney fees, court costs and the damages it was required to pay the plaintiff as a result of the April 15 accident. We disagree.

Section 2—715 of the Code defines "consequential damages" as including "injury to person or property proximately resulting from any breach of warranty." (Ill. Rev. Stat. 1979, ch. 26, par. 2—715.) Committee comment 5 of section 2—715 provides the following guidelines on proximate causation:

> "[T]he question of 'proximate' cause turns on whether it was reasonable for the buyer to use the goods without such inspection as would have revealed the defects. If it was not reasonable for him to do so, or if he did in fact discover the defect prior to his use, the injury would not proximately result from the breach of warranty." Ill. Ann. Stat., ch. 26, par. 2—715, Uniform Commercial Code Comment 5, at 588 (Smith-Hurd 1963).

The Code does not state that a buyer's negligence or other fault will bar recovery. Rather, it has been held that the buyer's negligence or fault only mitigates or reduces the damages the buyer may recover. (See *Signal Oil & Gas v. Universal Oil Products* (Tex. 1978), 572 S.W.2d 320, 328; *Kennedy v. City of Sawyer* (1980), 228

Kan. 439, 450, 618 P.2d 788, 797; *Wilson v. Dodge Trucks, Inc.* (1977), 238 Ga. 636, 637, 235 S.E.2d 142, 144.) Thus, under section 2—715 of the Code a buyer may recover only consequential damages proximately caused by the breach of warranty; he may not recover for those proximately caused by the buyer's own negligence or fault.

Here, the jury found that the plaintiff's damages were proximately caused by the presence of a defect in the product and by Munsterman's negligence in failing to discover the defect. Upon analysis, Munsterman, through the breach of warranty counts, seeks to recover from the defendants for damages sustained by it which were caused by its negligence as well as by the defect in the product. Although stated as counts for breach of implied warranty, the counts can be regarded as claims for implied indemnity, for Munsterman is seeking to recover its total loss. They were properly dismissed.

If the counts are regarded as claims for contribution, as the appellate court regarded them, the trial court's dismissal of them was correct on that supposition. This is, of course, because the Contribution Act provides that the settling tortfeasors are not liable for contribution.

The trial court did not err in dismissing Munsterman's third-party action for breach of implied warranty.

For the reasons given, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE STAMOS took no part in the consideration or decision of this case.

JUSTICE MILLER, specially concurring:

I concur in the result and reasoning contained in the majority opinion. I write separately, however, to emphasize how narrow the court's holding is with respect to

Munsterman's action against the third-party defendants for implied indemnity.

As the majority opinion recounts, the injured plaintiff sued A. F. Munsterman, Inc., the company that supplied the trailer hitch and chains, on theories of negligence and strict liability; the trial judge directed a verdict against Munsterman on the strict liability theory, and the jury found in the plaintiff's favor on the negligence count. According to the jury instructions used in this case, the plaintiff's allegations of negligence asserted that Munsterman had supplied codefendant Allen, operator of the truck and trailer combination, "with a pintle hook which it knew or should have known was in an unreasonably dangerous condition," and "with a low-boy type trailer with attached safety chains and 'S' hooks which it knew or should have known were inadequate, under the circumstances, to secure said trailer to the rear of the vehicle operated by Keith Allen." Moreover, the jury answered a special interrogatory finding Munsterman guilty of negligence proximately causing the plaintiff's injuries. It may be noted that Munsterman's conduct, as found by the jury, exceeded the nonculpable failure to discover a product defect.

Munsterman's action against the third-party defendants for contribution under the Contribution Act was barred by the plaintiff's settlement of her own claims against those parties (see Ill. Rev. Stat. 1981, ch. 70, pars. 302(c), (d)), and Munsterman makes no challenge to the good-faith basis of the settlement. Furthermore, I agree with the majority that Munsterman's negligent conduct in this case, as determined by the jury, precluded Munsterman from bringing a nonstatutory action for implied indemnity against the third-party defendants.

We have previously ruled that the active/passive form of implied indemnity is incompatible with this court's decision in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, adopting the

comparative negligence doctrine. (See *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 32-34.) We have left open, however, the question whether certain other theories of implied indemnity, such as an action based on vicarious liability, or an action brought by a "downstream" seller against an "upstream" product manufacturer or distributor, which is the form asserted by Munsterman in this case, survived the decision in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, and the subsequent enactment of the Contribution Act. See *Allison*, 113 Ill. 2d at 35; see also *Heinrich v. Peabody International Corp.* (1987), 117 Ill. 2d 162, 167-68.

As the majority opinion demonstrates, we need not decide that question here. An action for implied indemnity, predicated on the "upstream" liability of a product manufacturer or distributor, contemplates an absence of culpability on the part of the "downstream" indemnitee. (See, *e.g., Vertecs Corp. v. Reichhold Chemicals, Inc.* (Alaska 1983), 661 P.2d 619; *Tolbert v. Gerber Industries, Inc.* (Minn. 1977), 255 N.W.2d 362.) But the jury found that Munsterman was negligent, and therefore Munsterman cannot be the blameless indemnitee that the doctrine would require. For that reason, then, we need not, and do not, decide here the question whether an "upstream" implied indemnity action is compatible with the Contribution Act. Assuming that the "upstream" action still exists, we hold simply that it is not available to Munsterman in this case.

JUSTICE RYAN, dissenting:

I dissent because the opinion in this case permits the party primarily responsible for plaintiffs' injuries, the manufacturer who created the defective product, to effect a settlement and thereby place the major portion of the financial burden on one who must be considered only secondarily liable. Our contribution act should not be ap-

plied to bring about such an inequitable result. I voted for the majority opinions in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, *Stevens v. Silver Manufacturing Co.* (1977), 70 Ill. 2d 41, and *Robinson v. International Harvester Co.* (1977), 70 Ill. 2d 47, which established the principle of contribution among tortfeasors in this State, because I believed that the holdings in those cases made it possible to place the responsibility on the parties who actually caused the damage. However, the holding in this case permits the party who is primarily responsible for plaintiffs' injuries to manipulate the Contribution Act (which supposedly codifies the holding in *Skinner*) so that the major burden is shifted to one who is not primarily responsible. Everything that I stated in my dissent in *Stewart v. Village of Summit* (1986), 114 Ill. 2d 23, 31 (Ryan, J., dissenting) about the inequitable results arising from the application of the Contribution Act applies equally to this case.

The opinion notes that the jury found that Munsterman was negligent, and held that it would be unfair to permit Munsterman, through an action for implied indemnity, to shift the entire loss to another. I would agree with this conclusion if Munsterman's negligence were something other than the failure to discover the defect in the product. If Munsterman had been negligent in the manner in which it attached the trailer hitch, or if it had performed some act of negligence independent from the defective product, I would agree that prior holdings of this court and the Contribution Act would bar Munsterman's right to recover from others. Here, however, Munsterman simply failed to discover a defect in the trailer hitch, which was manufactured and placed in the stream of commerce by another.

In *Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104, 119, this court held that a consumer's failure to discover or guard against a defect in a product cannot be

compared in the apportionment of damages. Why then should the failure to discover a defect in the product by one in the chain of distribution insulate the creator of the defective product from an implied indemnity action? There is no logical reason why this court, in an attempt to follow the holding in *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, should create this inequitable result.

The rationale for permitting upstream indemnification in products liability cases was that the ultimate responsibility should be placed on the person placing the defective product in the stream of commerce and on the one who profited from its sale. Upstream indemnification is not a joint tortfeasor concept and indemnity should not therefore be precluded by the application of the Contribution Act.

The parties should not be permitted to circumvent the right of indemnity by playing games and placing the liability of one in the chain of distribution (Munsterman) in terms of "negligent failure to discover the defect," instead of in terms of strict liability. Such tactics harken back to the pre-1963 era, when courts were casting around for different theories to support liability for injuries caused by defective products. Finally, in *Greenman v. Yuba Power Products, Inc.* (1963), 59 Cal. 2d 57, 27 Cal. Rptr. 697, 377 P.2d 897, Justice Traynor cut through the tortured reasoning and said that we should call this cause of action what it really is, a new tort based on strict liability. See W. Prosser, Torts §98, at 656-58 (4th ed. 1971).

Plaintiff's cause of action in this case is based on injuries caused by a defective product. Munsterman's alleged negligence is that it failed to discover this defect. Whether Munsterman's liability is phrased in terms of negligence or strict liability, it, nonetheless, stems from the defective product. This is a products liability case, whether it is based on the concept of negligence or strict

liability. It is, in truth, not a case where Munsterman was jointly liable in tort with the manufacturer of the product, and the Contribution Act should not be applied. Munsterman's right of "upstream" indemnity should be preserved.