BONNIE PATE, Indiv. and as Adm'r of the Estate of John Pate, Deceased, Plaintiff-Appellant, v. THE CITY OF SESSER et al., Defendants-Appellees.

Fifth District   No. 79-31

Opinion filed July 31, 1979.

234

Talbert and Reeves, P.C., of Alton, for appellant.

John E. Jacobsen, of Campbell, Furnall, Moore and Jacobsen, of Mt. Vernon, for appellee City of Sesser.

August L. Fowler, of Fowler and Novick, for appellee Arthur L. Holloway.

Norbert Garrison, of Garrison and Garrison, of Marion, for appellee William E. Lampley.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff Bonnie Pate appeals from an order of the circuit court of Franklin County dismissing her wrongful death action against defendants City of Sesser, Arthur L. Holloway d/b/a Waltonville Texaco Service and William E. Lampley d/b/a The Plaza Lounge.

According to the facts alleged in plaintiff's second amended complaint, her deceased husband, John Pate, was involved in an automobile accident on Route 183 near Sesser at 4:30 a.m. on January 31, 1976. A Sesser policeman patrolling in the area was dispatched to the accident

scene to investigate and render assistance. Also called to the scene was a tow truck owned and operated by Holloway. Holloway made the necessary preparations for the removal of the disabled vehicle and requested the aid of Pate. It was at this point that an eastbound automobile driven by William J. Wilson collided with the vehicle involved in the original mishap. The force of impact caused the disabled vehicle to slam into the rear of the wrecker. This latter collision involving the Wilson vehicle caused severe spinal injuries to be inflicted upon Pate, who had been standing or stooping between the disabled vehicle and the tow truck, and resulted in his death on March 5, 1976.

The complaint further alleges that Wilson was intoxicated at the time of the second collision. The first four counts of the complaint proceed against the City of Sesser and Holloway under traditional negligence theories and seek to recover damages in excess of $15,000 for medical and funeral expenses and loss of support. The latter two counts of the complaint which are against Lampley are brought pursuant to section 14 of the Dramshop Act (Ill. Rev. Stat. 1977, ch. 43, par. 135) and seek the same damages.

Plaintiff elected not to bring any action against Wilson and signed instead an instrument entitled "Covenant Not To Sue" in exchange for the sum of $10,000. The complete instrument reads as follows:

"11—44800 B

### COVENANT NOT TO SUE

FOR AND IN CONSIDERATION OF the payment to me/us of the sum of Ten thousand and ————00/100 dollars ($10,000.00) and other good and valuable consideration, I/we realizing that there is doubt and uncertainty as to the nature and extent of my/our injuries, losses and damages and as to the liability of the payors, hereinafter described and that such facts are also in dispute, I/we, being of lawful age, have released and discharged, and by these presents do for myself/ourselves, my/our heirs, executors, administrators and assigns, release, acquire and forever discharge William J. Wilson and/or (his, her, their) master, servants, agents and officers (any and all of whom are hereinafter referred to as the payors), their heirs, representatives, successors and assigns from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses, compensation, and all consequential damage and also to the extent of their liability for contribution to other joint tortfeasors arising out of or in any way growing out of any and all known and unknown personal injuries and death or property damage resulting or to result from an accident that occurred on or about the 31st day of January, 1976, at or near Sesser, Illinois.

I/we reserve the right to make claim against any and every other

person, and reserve also the right to make claim that they, and not said payors, are solely liable to me/us for my/our injuries, losses and damages.

In the event that other tortfeasors are responsible to me for damages as a result of this accident, the execution of this release shall operate as a satisfaction of my claim against such other parties to the extent of the relative pro rata share of common liability of the payors herein released.

If it should appear or be adjudicated in any suit, action or proceeding, however, that said payors and others were guilty of joint negligence which caused my/our injuries, losses or damages, in order to save said payors harmless, I/we, as further consideration for said payment, will satisfy any decree, judgment or award in which there is such finding or adjudication involving said payors on their behalf and to the extent of their liability for contribution, also, I/we will indemnify and save forever harmless said payors against loss or damage because of any and all further claims, demands, or actions made by others on account of or in any manner resulting from said injuries, losses and damage.

This covenant contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital.

I/we further state that I/we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as my/our own free act.

SIGNED AND SEALED AT _____ , 19 ___

(CITY)     (STATE)     (DATE)"

Each of the defendants moved to have the counts stated against them dismissed on the theory that the instrument signed by plaintiff constituted a release of Wilson from liability rather than merely a covenant not to sue. Defendants' contention was that since Wilson was a joint tortfeasor by virtue of the fact that his name appears under all six counts of the complaint as the driver of the automobile which struck the disabled vehicle and thereby injured Pate, the release of Wilson operated to release all other tortfeasors from liability. Following a hearing on the matter the trial court specifically found: (1) the instrument entitled "Covenant Not To Sue," was a release and not a covenant not to sue; (2) Wilson was a joint tortfeasor; and (3) the release of Wilson served to release all of the defendants as joint tortfeasors. Pursuant to these findings an order was entered dismissing plaintiff's complaint with prejudice.

■■■ Illinois has long recognized a clear distinction between the legal effect of a release and a covenant not to sue. A release extinguishes a cause

of action whereas a covenant not to sue affects only the right to bring suit and not the cause of action itself. (*City of Chicago v. Babcock* (1892), 143 Ill. 358, 32 N.E. 271; *Holcomb v. Flavin* (1966), 34 Ill. 2d 558, 216 N.E.2d 811.) It is also recognized that an unqualified release of one joint tortfeasor operates to discharge all joint tortfeasors, while a covenant not to sue has no such effect. (*Hulke v. International Manufacturing Co.* (1957), 14 Ill. App. 2d 5, 142 N.E.2d 717; *Manthei v. Heimerdinger* (1947), 332 Ill. App. 335, 75 N.E.2d 132.) However, the scope of the release is controlled by the intent of the parties signing it.

> "Illinois courts have uniformly held that the intention of the parties controls the scope and effect of the release; such intent is determined from the language of the instrument when read in light of the circumstances surrounding the transaction. [Citations.] Under this approach, Illinois courts will restrict the language of a general release to the thing or things intended to be released and refuse to interpret generalities so as to defeat a valid claim not then in the minds of the parties. [Citation.]" (*Gladinus v. Laughlin* (1977), 51 Ill. App. 3d 694, 696, 366 N.E.2d 430, 432.)

In the same tenor as the quotation from *Gladinus* is Restatement (Second) of the Law of Torts §885(1) (1965), and Comment (d) thereto:

> "(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, does not discharge others liable for the same harm, unless it is agreed that it will discharge them.
>
>     * * *
>
> Comment:
>
>     * * *
>
>     *d. Limits and effect of rule.* A covenant not to sue clearly indicates by its form that it is not intended to discharge the liability of other tortfeasors jointly liable. On the other hand, a document in the usual form of a release given to one of them is normally construed as intended to discharge all claims for the tort and operates to discharge others also liable for the same harm. If, however, there is language in the release that manifests that the releasor intended to preserve his rights against the others, effect is given to this manifestation."

When called upon to determine whether a given document is to be construed as a release or a covenant not to sue, courts in Illinois have held the intention of the parties to be controlling. *Parmelee v. Lawrence* (1867), 44 Ill. 405, 413, as quoted in *Mitchell v. Weiger* (1977), 56 Ill. App. 3d 236, 238-39, 371 N.E.2d 888, 890, states:

> " 'We would further add that the weight of the modern authorities is against these cases, and in favor of the more reasonable rule, that where the release of one of several obligors shows upon its face,

and in connection with the surrounding circumstances, that it was the intention of the parties not to release the co-obligors, such intention, as in the case of other written contracts, shall be carried out, and to that end the instrument shall be construed as a covenant not to sue.' "

Although *Parmelee* dealt with the release of co-obligors on a contract, its rationale is applicable to cases involving joint tortfeasors. (See *City of Chicago v. Babcock.*) Another factor influencing the construction of such documents is whether full satisfaction for any injuries sustained is received by the injured party in exchange for the execution of the instrument.

"If the release is in such form or accompanied by such restrictions or reservations as to repel a presumption of satisfaction it does not necessarily discharge all, but is in effect merely a covenant not to sue the wrongdoer to whom the release is given." *Manthei v. Heimerdinger* (1947), 332 Ill. App. 335, 348, 75 N.E.2d 132, 138.

A discussion of the history of the development of the covenant not to sue and its relation to a release is found in 4 Corbin on Contracts §§931, 932 (1951). From that discussion it will be seen that there has been considerable confusion and uncertainty in the development, interpretation and application of instruments used to discharge from liability one of several joint tortfeasors. Although Professor Corbin's discussion encompasses American courts as a whole, it will be seen that the developmental experience of the Illinois courts closely parallels that for all courts as discussed by Corbin. *Cf. Mitchell v. Weiger.*

With regard to the type of instrument we consider here Professor Corbin states, in section 933:

"A retrospective survey of the many long opinions, in cases of both contract and tort, in which a release with reservation has been held to be a covenant not to sue, and in which also this imaginary 'covenant' has been refused its normal effect as a discharge because otherwise the 'reservation' would be made ineffective contrary to the obligee's intention, creates the impression of legalistic verbiage gone mad. How much simpler to hold directly that a release effective as to one obligor does not release the others if the intention not to release them is clear and full satisfaction has not been received! What a vast amount of litigation, some of it still going on, would have been avoided! What price justice!"

Plaintiff asserts in the instant case that the instrument at issue was signed with the intent that it have the effect of a covenant not to sue and should be so construed by this court. Particular emphasis is given to the instrument's title, "Covenant Not To Sue." Plaintiff also notes that the instrument is restricted in its effect to Wilson and his "master, servants,

agents and officers, their heirs, representatives, successors and assigns" and relates to no others. The instrument specifically reserves in plaintiff the right to make a claim against any and every other person. Furthermore, plaintiff claims that the sum of $10,000 was not a full and complete satisfaction for the expenses and damages sustained by reason of her husband's death. Plaintiff finally relies on *Mitchell v. Weiger*, for the proposition that the words in the first paragraph of the instrument, "release * * * and forever discharge William J. Wilson," do not alter the intent of plaintiff to execute a covenant not to sue.

Defendants would have us construe the instrument as a release and thereby affirm the order of the trial court dismissing the complaint. They point to the pervasive use of the term "release" within the instrument, coupled with the fact that the term "covenant" appears in the instrument only one time other than in the title. Moreover, they argue that the last paragraph of the instrument, which refers to the entire document as a release and states that plaintiff's signature thereto is the result of a free and knowledgeable act, manifests an intent by plaintiff to execute a release. Finally, defendants rely on *Artoe v. Navajo Freight Lines, Inc.* (1978), 65 Ill. App. 3d 119, 382 N.E.2d 492, in contending that the language, "Ten thousand and ————00/100 dollars ($10,000.00) and other good and valuable consideration," amounted to a presumption that plaintiff received full satisfaction.

For purposes of construction we cannot simply legalistically pigeonhole the instrument as either a release or a covenant not to sue for the reason that the first full paragraph suggests a release since it discharges Wilson from liability, while the paragraph immediately following strongly implies a covenant not to sue because the right of plaintiff to proceed against anyone else to recover damages is expressly reserved. Rather than assigning a legal label to the instrument, we should instead focus upon and give effect to the intent of the parties. (*Gladinus v. Laughlin*; *Parmelee v. Lawrence*.) To this end we find the case of *Mitchell v. Weiger* controlling.

The court in *Mitchell* was engaged in the task of construing a document entitled "Release," which contained language similar to the instrument in the present case. Paragraph 1 of the "Release" stated in part:

"Mitchell * * * does hereby release and forever discharge Journee, * * *, from all claims and liabilities of every kind and nature which now exist or which may in the future come into existence * * * ." (56 Ill. App. 3d 236, 237, 371 N.E.2d 888, 890.)

Paragraph 6 reads as follows:

"Anything to the contrary herein notwithstanding, nothing herein shall be deemed in any way to be a release by Mitchell of Illinois Central Industries, Abex Corporation, Signal-Stat Corporation

or any other direct or indirect subsidiaries of Illinois Central Industries from any right or claim which Mitchell has or may have against them or any of them." (56 Ill. App. 3d 236, 238, 371 N.E.2d 888, 890.)

Despite the release language in paragraph 1, the court held that the document should have the legal effect of a covenant not to sue. To hold otherwise, the court reasoned, would have been to frustrate the express reservation in paragraph 6 to bring suit against anyone else.

As in *Mitchell*, the second paragraph of the instrument in the present case expressly reserves the right to proceed against other parties. In order to give effect to the intention of the parties in the instrument as manifested by this paragraph we must treat the entire instrument as if it were a covenant not to sue.

Further evidence that the parties did not intend for the instrument to operate as a release is the fact that the $10,000 sum received by plaintiff in consideration for signing the document is less than a full and complete satisfaction of the injuries sustained. The total amount of medical and funeral expenses as presented in plaintiff's answers to interrogatories exceeds $20,000, and this figure does not take into account any loss of support which is also part of the recovery sought by plaintiff. We find no merit in defendants' argument that the language "Ten thousand and —— ——00/100 dollars ($10,000.00) and other good and valuable consideration" found in the instrument raises the presumption that full satisfaction was received. They rely on *Artoe v. Navajo Freight Lines, Inc.* for the proposition that a release for a consideration constitutes full satisfaction for any injury. We find their argument to be circular in the sense that they attempt to resolve the issue of whether the instrument should be construed as a release by utilizing a proposition which assumes that the instrument in question is a release.

■ For the foregoing reasons, we hold that although the instrument releases Wilson from liability it should be treated as a covenant not to sue with respect to an action brought by plaintiff against any other party.

Defendant City of Sesser raises a separate issue on appeal. Defendant contends that plaintiff failed to serve proper notice to the city of her intention to file suit as required by section 8—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1977, ch. 85, par. 8—102).

■ Plaintiff filed a motion in this court to strike part II of defendants' brief in which this issue is raised. As grounds for the motion, plaintiff asserts that "no notice of cross-appeal was filed by Defendants-Appellees and that this issue was not reached by the Trial Court * * * ." In denying the motion we note that defendant City of Sesser need not file a cross-appeal in order to advocate a position sustaining the trial court's order and that this issue was raised by defendant in its motion to dismiss.

■■ Specifically, defendant argues that since the notice referred only to a "Rural Township," it was insufficient to put the city on notice of an impending tort claim. By virtue of the improper notice, defendant maintains that the action was properly dismissed.

The "Notice of Injury" reads in part:

"TO:   City Clerk
        City of Sesser
        Sesser, Illinois 62884

YOU ARE HEREBY NOTIFIED, pursuant to Illinois Revised Statutes, 1975, Chapter 85, Section 8—102, that BONNIE PATE, Administrator of the Estate of John W. Pate is about to commence a civil action for damages against Rural Township on account of the death of her husband, John W. Pate."

The purpose of section 8—102 is to provide timely notice to municipal entities of personal injuries or property damage in order to assure prompt investigation and settlement of meritorious claims as well as allowing them advance warning so as to plan their budgets to reflect such claims for taxing purposes. (*Reynolds v. City of Tuscola* (1971), 48 Ill. 2d 339, 270 N.E.2d 415.) The court in *Reynolds* stated:

"In consideration of this statute we are also guided by the fact that the Local Governmental and Governmental Employees Tort Immunity Act is in derogation of the common-law action against local public entities and must, therefore, be strictly construed against the local public entity." (48 Ill. 2d 339, 342, 270 N.E.2d 415, 417.)

This court stated in *Meisenheimer v. City of Chester* (1973), 15 Ill. App. 3d 1088, 1091, 305 N.E.2d 322, 324, quoting from *Reynolds v. City of Tuscola*, " '[a] liberal interpretation of the statute is necessary because of its position in relation to the common law and because a more restrictive interpretation could lead to absurd, inconvenient or unjust consequences.' "

In keeping with the spirit of liberally construing section 8—102 in favor of the plaintiff, we hold that in the instant case the notice sent to the City of Sesser adequately met the statutory requirements. Despite the reference to a rural township, the fact that the notice was addressed to the city clerk of Sesser was sufficient to put the city on notice of plaintiff's intention to bring a cause of action against it.

For the reasons stated above we reverse the order of the circuit court which dismissed plaintiff's complaint and remand for further proceedings.

Reversed and remanded.

G. MORAN, P. J., and KARNS, J., concur.