THOMAS BRADY *et al.*, Plaintiffs-Appellants, v. PRAIRIE MATERIAL
SALES, INC., Defendant-Appellee (Bruce R. Nagel *et al.*, Defendants).

Second District No. 2—88—1231

Opinion filed November 2, 1989.

John J. Henely, Ltd., of Chicago (John C. Lorenzen, of counsel), for appellants.

D. Kendall Griffith, Thomas A. Brabec, and Gerald Haberkorn, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stephen R. Swofford, of counsel), for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiffs, Thomas and Linda Brady, appeal from an order of the circuit court of Kane County granting defendant Prairie Material Sales Inc.'s motion to dismiss with prejudice pursuant to section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—619). The trial court entered the required finding of "no just reason to delay enforcement or appeal," and plaintiffs filed a timely notice of appeal pursuant to Supreme Court Rule 304 (107 Ill.

2d R. 304). The issue on appeal is whether a written settlement agreement entered into by plaintiffs with defendant's employee, Bruce Nagel, operates to discharge defendant.

Plaintiff Thomas Brady was working in his office in a building adjacent to Route 53 in the Village of Bolingbrook, Illinois, on November 18, 1986. It was snowing heavily. Bruce Nagel was hauling a load of gravel north on Route 53 for his employer, defendant. A car, driven by Keith Brogan, traveling southbound on Route 53 swerved into Bruce Nagel's lane, and in avoiding Brogan, Bruce Nagel lost control of his truck, went off the road and crashed into the building in which plaintiff Thomas Brady was working. Plaintiff was seriously injured and requires constant medical attention which costs $10,000 to $12,000 per month.

Plaintiffs filed suit for personal injuries and loss of consortium against Keith Brogan, Bruce Nagel and defendant. Plaintiffs' counts against Keith Brogan and Bruce Nagel were based on theories of negligence. Plaintiffs' count against defendant was based solely on a theory of *respondeat superior* and sought to hold defendant liable for the alleged negligent driving of its employee, Bruce Nagel.

Plaintiffs entered into a written settlement agreement with Bruce Nagel and Bruce Nagel's personal insurance carrier, West Bend Mutual Insurance Co. (West Bend). Plaintiff Thomas Brady accepted $80,000 and his wife, Linda Brady, accepted $20,000. Bruce Nagel's policy had a limit of $100,000. In return, plaintiffs released Bruce Nagel and West Bend from further liability for the accident as evidenced by the written settlement agreement, whose construction and interpretation is at issue in this appeal. Plaintiffs filed a motion for a good-faith finding pursuant to section 2(c) of the Contribution Among Joint Tortfeasors Act (Contribution Act) (Ill. Rev. Stat. 1987, ch. 70, par. 302(c)), and the trial court granted the motion and dismissed Bruce Nagel and West Bend from the suit.

Defendant then filed its motion to dismiss pursuant to section 2—619 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—619), arguing that the written settlement agreement constituted a full release of all claims and other parties including defendant. Plaintiffs responded that the instrument was a covenant not to sue and only released those parties specifically named, Bruce Nagel and West Bend. In support, plaintiffs filed the affidavit of their attorney and the attorney for Bruce Nagel which stated that the instrument was only intended by these attorneys to release Bruce Nagel and West Bend from further liability and was not intended to release defendant. Defendant was not named in the instrument. Defendant did not pay any consider-

ation for the agreement. The trial court, without relying on the supporting affidavits by the attorneys filed by plaintiffs, ruled that the agreement discharged defendant from liability to plaintiffs and granted defendant's motion.

■■ ■ In construing written settlement agreements between an injured party and those sought to be held liable, the issue is often framed in terms of whether the instrument is a release or a covenant not to sue. (*Pate v. City of Sesser* (1979), 75 Ill. App. 3d 233, 393 N.E.2d 1146.) A release is said to extinguish a cause of action, while a covenant not to sue affects only the right to bring suit and not the underlying cause of action itself. (*Pate v. City of Sesser* (1979), 75 Ill. App. 3d 233, 393 N.E.2d 1146.) An unqualified release of one joint tortfeasor operated to discharge all other joint tortfeasors while a covenant not to sue one joint tortfeasor did not release all other joint tortfeasors. (*Pate v. City of Sesser* (1979), 75 Ill. App. 3d 233, 393 N.E.2d 1146; *cf. Stewart v. Village of Summit* (1986), 114 Ill. 2d 23, 499 N.E.2d 450 (covenant not to sue employee which contains no express reservation of rights to sue others is interpreted as evidencing intent to bar covenantor's cause of action in *respondeat superior* against employee's employer, while covenant not to sue employee which contains a general reservation of rights clause in favor of covenantor expresses intent to preserve right of covenantor to proceed against employee's employer on a theory of *respondeat superior*).) However, framing the issue as whether an instrument is a release or a covenant not to sue and thereby releases other persons not a party to the agreement distorts the real issue, which is a determination of the intent of the parties to the agreement. *Stewart v. Village of Summit* (1986), 114 Ill. 2d 23, 499 N.E.2d 450; *Pate v. City of Sesser* (1979), 75 Ill. App. 3d 233, 393 N.E.2d 1146.

■■ Whether called a release or a covenant not to sue, the written agreement is a contract and subject to the normal rules of contract construction and interpretation. (*Wysocki v. Upjohn Co.* (1987), 157 Ill. App. 3d 868, 510 N.E.2d 994.) Where a written instrument evidencing an agreement is clear and unambiguous, the meaning of the instrument and the intention of the parties is to be determined from the face of the instrument without resort to parol evidence or any other extrinsic aids. (*Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 472 N.E.2d 791.) The instrument which plaintiff Thomas Brady signed and delivered to Bruce Nagel and West Bend provided:

"*RELEASE OF ALL CLAIMS*
KNOWN ALL MEN BY THESE PRESENTS:
That the undersigned, THOMAS BRADY being of lawful age,

for the sole consideration of the sum of EIGHTY THOUSAND AND NO/100******Dollars ($80,000.00) to the undersigned in hand paid, the receipt and sufficiency of which is hereby acknowledged, does hereby for myself and for my heirs, executors, administrators, successors and assigns *release, acquit and forever discharge* Bruce Nagel and West Bend Mutual Insurance Company and his, her, their, or its agents, servants, successors, heirs, executors, administrators, officers, directors and employees and insurers, *and all other persons, firms, corporations, associations, partnerships or other entities, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned has had, now has, or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damages, and the consequences thereof, resulting or to result from an accident, which occurred on or about the 18th day of November, 1986, at or near Illinois Route 53 at its intersection with Royce Road, Village of Bolingbrook, County of Will, State of Illinois.*

It is understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that this settlement and the payment made pursuant thereto are not to be construed as an admission of liability on the part of the party or parties hereby released, and that the party or parties hereby released deny any and all liability with respect to the aforesaid accident and intend merely to avoid litigation and buy their peace.

The undersigned understands and hereby declares and represents that the injuries sustained are or may be permanent and progressive in nature and that recovery therefrom is uncertain and indefinite and that there may be unknown or unanticipated injuries, losses, medical expenses, and other expenses or damages resulting from the aforesaid accident and that in executing this Release it is understood and agreed that this Release is intended to include all such injuries, losses, medical expenses and other expenses or damages.

This release expressly reserves all rights of the person, or persons, or entities on whose behalf the payment is made and the rights of all persons and parties in privity or connected with them, and expressly reserves to them their right to pursue any and all of their legal remedies, if any, including but not lim-

ited to claims for contribution, indemnity, property damage and personal injury against the undersigned or those in privity or connected with the undersigned.

This Release contains the entire agreement between the parties hereto, and the terms of this Release are contractual and not a mere recital." (Emphasis added.)

Plaintiff Linda Brady signed an identical instrument, except the amount received was $20,000.

■ We construe this instrument to be an unqualified release by plaintiffs of all causes of actions or other rights of plaintiffs against any person or entity including defendant which arose or might arise out of the accident and resulting injuries which occurred on November 18, 1986. The instrument is entitled "Release of All Claims." The term "release" and not the term "covenant" appears throughout the entire instrument. The language of the first paragraph appearing in emphasis above clearly and unambiguously expresses an intent on the part of plaintiffs to release any and all rights against any and all persons or other entities. The instrument further states in the second paragraph that the settlement is a compromise of a doubtful and disputed claim and intended to avoid litigation and buy peace. The third paragraph states that the plaintiffs understand the uncertain nature of the injuries and fully intend to release all claims for any and all injuries known and unknown. The language of these three paragraphs is almost identical to the language of an instrument construed by the Appellate Court for the First District in *Wysocki v. Upjohn* (1987), 157 Ill. App. 3d 868, 510 N.E.2d 994. The court in *Wysocki* found such language contained in a written settlement with a hospital and others to express a clear and unambiguous intent to release all other tortfeasors even those not a party to the settlement agreement including the defendant, who was being sued under a theory of strict products liability. (*Wysocki v. Upjohn* (1987), 157 Ill. App. 3d 868, 510 N.E.2d 994.) Nor do we interpret the fourth paragraph, which reserves certain rights, to require us to interpret the agreement as a covenant not to sue or to find an ambiguity requiring us to resort to extrinsic evidence to resolve the intention of the parties. (*Mitchell v. Weiger* (1977), 56 Ill. App. 3d 236, 371 N.E.2d 888.) This paragraph reserves all rights Nagel and West Bend may have against plaintiffs. This paragraph is not inconsistent with any of the paragraphs already discussed or our interpretation of the instrument as an unqualified release by plaintiffs of all persons.

■ Plaintiffs argue that they never intended to release their claim against defendant or others and rely on the affidavits of the at-

torneys who drafted the agreement. Further, they argue that in light of the extremely serious injuries suffered by Thomas Brady and the medical expenses that have been incurred and will be incurred in the future, the settlement amount of $100,000 was a fraction of the value of their claims and supports their argument that they only intended to release Bruce Nagel and West Bend. Plaintiffs are asking us to rely upon extrinsic evidence to interpret a clear and unambiguous written instrument in a manner directly contrary to the intent of plaintiffs as expressed in the instrument. Where the written instrument is clear and unambiguous, extrinsic evidence as to what the parties may have understood the language of the instrument to mean is not admissible. *Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 472 N.E.2d 791.

Plaintiffs argue that extrinsic evidence is admissible to prove intent where both parties make a mutual mistake of fact. (*Beynon Building Corp. v. National Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 455 N.E.2d 246.) Therefore, plaintiffs contend the affidavits of the attorneys, filed by plaintiffs in response to defendant's motion to dismiss, may be relied upon to demonstrate that the release contract should be interpreted to reserve a right in plaintiffs to sue defendant. Plaintiffs misunderstand the rules regulating the admissibility of parol or extrinsic evidence.

■■ Parol evidence is admissible to prove the intent of the parties to an ambiguous written instrument but not admissible where there is a clear and unambiguous written instrument. (*Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 472 N.E.2d 791.) However, where an unambiguous written instrument is alleged, due to mistake, not to express the actual agreement of the parties, the instrument may be reformed by the court to express the actual agreement, if proved by clear and convincing evidence. (*Briarcliffe Lakeside Townhouse Owners Association v. City of Wheaton* (1988), 170 Ill. App. 3d 244, 524 N.E.2d 230.) In such a reformation action or situation, parol evidence is not admitted to aid in interpretation of the written instrument but to prove by clear and convincing evidence the actual agreement in light of the allegation that the written instrument, in spite of the apparent agreement expressed by its language, fails to express the actual agreement entered into between the parties. (*Briarcliffe Lakeside Townhouse Owners Association v. City of Wheaton* (1988), 170 Ill. App. 3d 244, 524 N.E.2d 230.) Plaintiffs never argued in the trial court that the release contract, due to a mistake of fact, failed to express the actual agreement of the parties, and, therefore, the release contract should be reformed. Rather, the argument of plaintiffs' counsel is that the language of the release as written should be construed

so as not to cause a release of defendant. We decline to so hold. Plaintiffs have waived any reformation argument by not raising it in the trial court. *Cosentino v. Price* (1985), 136 Ill. App. 3d 490, 483 N.E.2d 297.

■■ ■ Additionally, where a defendant's motion to dismiss is based upon a release agreement, valid on its face, then the burden shifts to the plaintiff to sufficiently allege and prove that a material issue of fact exists which would invalidate the release agreement. (*Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 387 N.E.2d 878.) Plaintiffs, in addition to having never raised the mistake or reformation argument in the trial court, did not allege in their response to defendant's motion specific facts, supported by affidavits, that would, if proved, entitle plaintiffs to reformation of the release contract. (See *Castro v. Chicago, Rock Island & Pacific R.R. Co.* (1980), 83 Ill. 2d 358, 415 N.E.2d 365; 107 Ill. 2d R. 191(a) (requirements of affidavits filed in response to section 2—619 motions); *Briarcliffe Lakeside Townhouse Owners Association v. City of Wheaton* (1988), 170 Ill. App. 3d 244, 524 N.E.2d 230 (listing required allegations to state a cause of action for reformation based on mutual mistake).) The most obvious deficiency of plaintiffs' affidavits is that they refer to the intention of the attorneys who drafted the written release and say nothing about the intent of the parties or the substance of the alleged actual agreement. (See *Briarcliffe Lakeside Townhouse Owners Association v. City of Wheaton* (1988), 170 Ill. App. 3d 244, 524 N.E.2d 230.) These affidavits would be insufficient to raise a question of material fact that would defeat defendant's motion to dismiss. *Castro v. Chicago, Rock Island & Pacific R.R. Co.* (1980), 83 Ill. 2d 358, 415 N.E.2d 365.

Plaintiffs argue that section 2(c) of the Contribution Act (Ill. Rev. Stat. 1987, ch. 70, par. 302(c)), as interpreted by the supreme court in *Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 461 N.E.2d 361, evidences a legislative intent that a release of specifically named tortfeasors does not, by its additional use of general release language, operate to discharge other tortfeasors who were not parties to the contract and were not designated by name or otherwise specifically identified. Plaintiffs argue that under *Alsup*, the release they signed only operates to discharge the liability of those named, *i.e.*, Bruce Nagel and West Bend. We agree with plaintiffs' interpretation of *Alsup*.

■■ Section 2(c) of the Contribution Act provides:

"(c) When *a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable*

*in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability* for the injury or wrongful death *unless its terms so provide* but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 70, par. 302(c).)

Section 2(c) was designed to abolish the harsh and unfair common-law rule that a release of one joint tortfeasor released all other joint tortfeasors by operation of law. (*Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 201, 461 N.E.2d 361, 364.) The supreme court in *Alsup* refused to give effect to a broadly worded general release which purported to release payer and "all other persons, firms, and corporations, both known and unknown." (*Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 200, 461 N.E.2d 361, 363.) The supreme court, after recognizing the common use of these types of general release forms, refused to interpret such language as meeting the requirements of section 2(c) for discharge of other tortfeasors, *viz.*, "unless its terms so provide." (*Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 200, 461 N.E.2d 361, 363.) The supreme court reasoned that to give effect to such language in the release contract would often result in the unintended release of persons who were strangers to the release contract. (*Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 201, 461 N.E.2d 364.) Such a result, the supreme court concluded, would thwart one of the important purposes behind the Contribution Act, which was intended to abolish the common-law rule that produced the involuntary discharge of joint tortfeasors. (*Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 201, 461 N.E.2d 361, 364.) The supreme court in *Alsup* held that in order for a release to discharge tortfeasors, other than the ones who bargained for the release, the release must specifically identify the other tortfeasors in order to discharge their liability. *Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 461 N.E.2d 361; *Trexler v. Chrysler Corp.* (1984), 104 Ill. 2d 26, 470 N.E.2d 300.

■■■ Accordingly, in spite of the clear and unambiguous nature of the broadly worded general release, defendant, who was not a party to the release contract nor designated by name or otherwise specifically identified, is not discharged from liability to plaintiffs as a result of the release contract entered into between plaintiffs and Bruce Nagel and West Bend. *McNamara v. Shermer* (1987), 157 Ill. App. 3d 864, 510 N.E.2d 950. *Cf. Wysocki v. Upjohn Co.* (1987), 157 Ill. App.

3d 868, 510 N.E.2d 994 (Contribution Act, by its terms, applies to causes of action arising on or after March 1, 1978, and, therefore, *Alsup* is inapplicable to release agreement concerning accident which occurred on October 3, 1975).

Defendant argues that where the employer is being sued solely on a theory of *respondeat superior*, the employer is not "any of the other tortfeasors" as that term is used in section 2(c) of the Contribution Act (Ill. Rev. Stat. 1987, ch. 70, par. 302(c)) so as to require that the employer be specifically identified in order to be released by a general release contract between the employer's employee and an injured party where the employer seeking release was not a party to the release contract. (*Bristow v. Griffitts Construction Co.* (1986), 140 Ill. App. 3d 191, 488 N.E.2d 332 (found *Alsup* inapplicable to prevent covenant not to sue entered between injured party and negligent employee from discharging employee's employer from liability based on a theory of *respondeat superior*).) *Bristow*, unlike the instant case, involved the effect of a covenant not to sue an employee given by a plaintiff in exchange for $20,000. The court in *Bristow* held that a covenant not to sue an employee extinguished the right of the plaintiff to proceed against the employee's employer under a theory of *respondeat superior*. (*Bristow v. Griffitts Construction Co.* (1986), 140 Ill. App. 3d 191, 488 N.E.2d 332.) The court in *Bristow* based its holding on its interpretation of the supreme court's holding in *Holcomb v. Flavin* (1966), 34 Ill. 2d 558, 216 N.E.2d 811, that a covenant not to sue an employee must operate to release a vicariously liable employer or the employee would derive no benefit from the covenant because the employer, if held liable, could seek indemnity against the employee and deprive the employee of the benefit of the covenant. (*Bristow v. Griffitts Construction Co.* (1986), 140 Ill. App. 3d 191, 193, 488 N.E.2d 332, 334.) The *Bristow* court then addressed the supreme court's holding in *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 312 N.E.2d 259, which held that a covenant not to sue an employee which expressly reserved the right to sue the employer preserved the plaintiff's rights to proceed against the employer on a theory of *respondeat superior*. The *Bristow* court reasoned that such a result, which appeared to deny the employee the benefit of his covenant, was permitted because the employee expressly agreed. *Bristow v. Griffitts Construction Co.* (1986), 140 Ill. App. 3d 191, 193, 488 N.E.2d 332, 334.

The *Bristow* court then addressed section 2(c) of the Contribution Act and found it inapplicable to prevent the discharge of the employer because the *Bristow* court concluded that a vicariously liable employer

was not an "other tortfeasor" to whom section 2(c) of the Contribution Act applied. (*Bristow v. Griffitts Construction Co.* (1986), 140 Ill. App. 3d 191, 488 N.E.2d 332.) The *Bristow* court further reasoned that section 2(d) of the Contribution Act (Ill. Rev. Stat. 1987, ch. 70, par. 302(d)) had not been applied to bar suits for implied indemnification based on vicarious liability or *respondeat superior*, and, therefore, unless the employer was discharged by the covenant not to sue, the employee would get nothing of value for his payment. (*Bristow v. Griffitts Construction Co.* (1986), 140 Ill. App. 3d 191, 198, 488 N.E.2d 332, 338.) The *Bristow* court reasoned that this was consistent with policies of encouraging settlements and holding parties responsible based on their relative culpabilities. *Bristow v. Griffitts Construction Co.* (1986), 140 Ill. App. 3d 191, 198, 488 N.E.2d 332, 338.

 We disagree with the rationale expressed in *Bristow* and decline to follow its reasoning to hold that section 2(c) as interpreted in *Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 461 N.E.2d 361, does not apply to the instant situation. First, as the outcome in *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 312 N.E.2d 259, shows, although an employer's liability based on *respondeat superior* may be derivative, a covenant not to sue affecting plaintiff's rights against the employee does not automatically by operation of law affect plaintiff's rights against the employer. (*Stewart v. Village of Summit* (1986), 114 Ill. 2d 23, 499 N.E.2d 450.) The court in *Stewart* stated that *Holcomb* and *Edgar County* were "consistent with the long-established rule that the agreement is the controlling factor and the governing fact to be determined is the intent of the parties." (*Stewart v. Village of Summit* (1986), 114 Ill. 2d 23, 30, 499 N.E.2d 450, 453.) The court in *Stewart* did not interpret *Holcomb* and *Edgar County* to depend on a distinction between a derivatively liable tortfeasor, as opposed to other tortfeasors. Second, although the defendant in *Stewart* sought to rely on *Bristow*, the supreme court in *Stewart* declined to address the issue decided in *Bristow* of whether section 2(c) of the Contribution Act applied to prevent the release of the employer because it based its holding on the expressed intent of the parties not to release the employer, who was liable under a theory of *respondeat superior*. *Stewart v. Village of Summit* (1986), 114 Ill. 2d 23, 499 N.E.2d 450.

 Third, we disagree with the *Bristow* court's conclusion that an employer liable solely on a theory of *respondeat superior* is not one of the "other tortfeasors" under section 2(c) of the Contribution Act. The use of the term "tortfeasors" in the Contribution Act

seems synonymous with "persons *** subject to liability in tort" and "persons liable in tort" as used in sections 2(a) and 2(c) (Ill. Rev. Stat. 1987, ch. 70, pars. 302(a), (c)). Under the doctrine of *respondeat superior*, the liability of the master and servant for the negligent acts of the servant is deemed to be that of one tortfeasor. (*Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 382 N.E.2d 1217.) "The operative facts which comprise the alleged basis for liability of the master are identical to those which would prove the servant liable." (*Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 124, 382 N.E.2d 1217, 1221.) Since the servant who acts negligently is obviously a person liable in tort, it is reasonable to conclude that the liability of the master, although derivative, is still a form of liability in tort as that term is used in the Contribution Act, and an employer is also a "tortfeasor" as that term is used in the Contribution Act. (*Cf. McCottrell v. City of Chicago* (1985), 135 Ill. App. 3d 517, 481 N.E.2d 1058 (plaintiff seeking to recover for injuries caused by negligence of defendant's employee may sue either employee or defendant employer because they are jointly and severally liable).) The Local Governmental and Governmental Employees Tort Immunity Act establishes various types of "tort" immunity for governmental entities, where the governmental entities' liability is derivative and arises solely due to the negligent acts of the employee of the governmental entity. (See generally Ill. Rev. Stat. 1987, ch. 85, par. 1—101 *et seq.*) We do not find the legislature intended to exclude parties derivatively liable for the negligent acts of others from the term "tortfeasor" as used in the Contribution Act.

██ Fourth, the supreme court has repeatedly declined to address whether the implied indemnity action between an employer and employee survives under sections 2(d) and 2(e) of the Contribution Act in light of a good-faith settlement involving a derivatively liable party. (*Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245, 527 N.E.2d 1248.) And, we do not agree with the *Bristow* court's conclusion that such a claim for indemnity is not affected by the Contribution Act and, therefore, that the employee may receive nothing for settling because he is still exposed to an indemnity action. See *Frazer v. A.F. Munsterman, Inc.* (1986), 145 Ill. App. 3d 1092, 496 N.E.2d 309, *aff'd on other grounds* (1988), 123 Ill. 2d 245, 527 N.E. 2d 1248; see also *Bristow v. Griffitts Construction Co.* (1986), 140 Ill. App. 3d 191, 488 N.E.2d 332 (dissenting opinion).

██ We hold that section 2(c) of the Contribution Act as interpreted by *Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 461 N.E.2d 361, does apply to prevent an unqualified general release, given to an employee tortfeasor, from releasing an employer

who was not specifically identified in the release and was not a party to the release agreement even where the employer's liability is based on *respondeat superior*.

Reversed and remanded.

REINHARD and McLAREN, JJ., concur.