**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, et al., Plaintiffs,**

v.

**ART PAPE TRANSFER, INC., Defendant.**

No. 92 C 6354.

United States District Court, N.D. Illinois.

April 11, 1995.

**1170**

Terence George Craig, Central States Law Dept., Rosemont, IL, David A. Sawyer, Russell N. Luplow, David Machnacki, Gregory Robert Schermerhorn, Russell N. Luplow, P.C., Bloomfield Hills, MI, for plaintiffs.

Mary Elizabeth Gardner, McNeela & Griffin, Ltd., Chicago, IL, James S. Barber, Amy Catherine Scalise, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, Leonard R. Kofkin, Steven Jay Teplinsky, Donald Joseph Vogel, Fagel & Haber, Chicago, IL, for defendant.

## MEMORANDUM ORDER AND OPINION

GETTLEMAN, District Judge.

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund and its present Trustees bring this action to collect damages relating to pension plan withdrawal liability, asserting a claim pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), §§ 502(a)(3) and 4301(a)(1), 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1) against defendant.[1] Before the court is defendant's motion for summary judgment, along with supporting and opposing memoranda, affidavits and exhibits. For the reasons stated below, the court grants defendant's motion.

### Facts [2]

The events that led to this action began in October, 1985, when Ringle Express, Inc. ("Ringle") ceased operations covered under a collective bargaining agreement. Ringle's cessation of operations triggered a complete withdrawal, as defined in 29 U.S.C. § 1383, from plaintiffs' multi-employer pension plan. In August, 1985, prior to this occurrence, McGriff Corporation, owner of the stock in Ringle, sold the Ringle stock to Dixiana of Georgia. In March 26, 1986, plaintiffs sent Ringle a Notice and Demand for payment of withdrawal liability.

On March 13, 1986, Dixiana of Iowa ("Dixiana") was incorporated. Plaintiffs allege, and for purposes of this motion defendants concede, that Dixiana is the "alter-ego" of Dixiana of Georgia. In March, 1990, defendant Art Pape Transfer, Inc. merged with Dixiana, forming one entity which thereafter was called Art Pape Transfer, Inc.

On May 1, 1991, plaintiffs filed a suit in this court titled *Central States, et al v. Machinery Trailers, Inc., McGriff Corp., Ann Lee McGriff, as Personal Representative of Estate of Robert L. McGriff, deceased and Davenport Bank and Trust Company as Trustee of the Robert L. McGriff Trust,* Case No. 91 C 2628 (N.D.Ill.) (*"Machinery Trailers"*). In *Machinery Trailers,* plaintiffs asserted a cause of action against said defendants for the withdrawal liability of Ringle alleging that Machinery Trailers, McGriff Corp., and Ringle constitute a single employer within the meaning of ERISA and therefore are jointly and severally liable for the Ringle Withdrawal Liability. The parties to *Machinery Trailers* settled that case and entered into a Settlement and Release Agreement (the "Agreement").

The Agreement contains the following relevant passages:

### Recitals

\*  \*  \*  \*  \*  \*

C. On or about October 1, 1985, Ringle ceased all operations covered by its collective bargaining agreement, permanently ceased to have an obligation to contribute to the [plaintiffs'] Pension Fund and permanently ceased making contributions to the Pension Fund, thereby effecting a complete withdrawal from the Pension Fund.

D. As a result of Ringle's complete withdrawal from the Pension Fund on or about October 1, 1985, the Pension Fund issued an assessment and demand to Ringle for

---

1. In plaintiffs' second amended complaint there is an additional claim that the court toll the statute of limitations regarding plaintiffs' claim against defendant. Because the court finds that defendant is entitled to summary judgment on the merits of plaintiff's claim for withdrawal liability, the court will not discuss the merits of

plaintiffs' or defendant's statute of limitations arguments.

2. The abbreviated facts are drawn from the parties' Local Rule 12(M) and 12(N) statements and include only undisputed facts that are relevant to this opinion.

payment of its withdrawal liability in the amount of $2,274,342.50.

E. On or about May 1, 1991, the Pension fund filed a complaint ... against Machinery Trailers, McGriff Corp., Ann McGriff and Davenport Bank, seeking the entire amount of the withdrawal liability assessment of $2,274,342.50, interest in the amount of $748,278.76, liquidated damages in the amount of $748,278.76, billing charges in the amount of $15,275.88, amortization charges in the amount of $462,228.47, attorney fees and court costs (collectively, the "Ringle Withdrawal Liability")

\* \* \* \* \* \*

K. The Pension Fund and the McGriffs now desire to compromise and settle all claims brought in the Federal Court Case relating to the Ringle Withdrawal Liability, and the Pension Fund desires to fully and finally release any and all claims arising out of or in any way connected with the Federal Court Case and the Ringle Withdrawal Liability.

### *Agreement*

**2. *Release and Discharge.*** With the payment made as a result of paragraph 1 of this Agreement [$800,000.00], the Pension Fund shall and does hereby satisfy, release, acquit and forever discharge the McGriffs [3] and all members of any group of trades or businesses under common control with Ringle within the meaning of Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), and the regulations promulgated thereunder, from any and all rights, claims, actions, causes of action, suits, contracts, agreements and demands whatsoever and however arising (hereinafter referred to collectively as "claims"), which the Pension Fund may now have or may have after the singing of this Agreement, arising out of or in any way connected with (a) the Ringle Withdrawal Liability, (b) the complete withdrawal by Ringle from the Pension Fund, (c) the Federal Court Case and (d) Ringle's participation in or contributions to the Pension Fund.

\* \* \* \* \* \*

**8. *Parties Bound.*** This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, executors, trustees, administrators, representatives, beneficiaries, officers, directors, shareholders, agents, employees, servants, successors, assigns and related corporations.

\* \* \* \* \* \*

**11. *Entire Agreement.*** This Agreement contains the entire agreement between the parties with respect to the transaction contemplated herein and supersedes all prior agreements and understandings whatsoever between the parties. The recitals of this Agreement are hereby incorporated into and made a part of this Agreement by reference thereto as if fully restated herein.

The final signature and execution of the Agreement was dated April 22, 1992. The instant action, filed on September 18, 1992, alleges that defendant is the survivor of a merger with Dixiana, which in turn is the alleged alter-ego of Dixiana of Georgia, that allegedly was a trade or business in common control with Ringle. As such, plaintiffs allege, defendant is jointly and severally liable for Ringle's withdrawal liability. Based on these allegations, plaintiffs assert in their second amended complaint that defendant is a trade or business under common control with Ringle as defined under 29 U.S.C. § 1301,[4] and thus is liable for the Ringle withdrawal liability assessments, including

---

**3.** Paragraph J of the Agreement defines the "McGriffs" as Ringle, Machinery Trailers, Inc., McGriff Corp., Ann Lee McGriff, Davenport Bank & Trust, and the McGriff Children, whom plaintiffs alleged in the *Machinery Trailer* case were liable "for all or a portion of the Ringle Withdrawal Liability."

**4.** 29 U.S.C. § 1301(b)(1) states in part:

... For purposes of this subchapter, under regulations prescribed by the corporation, all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer ...

the withdrawal liability of $2,274,342.50, interest, billing charges, amortization charges, additional interest or liquidated damages and post-judgment interest (the "Ringle Withdrawal Liability").

Defendant moves for summary judgment asserting: (1) that the Agreement in *Machinery Trailers* bars any further claims plaintiffs may have against any common control group members for the Ringle Withdrawal Liability; (2) that defendant is a third party beneficiary to the Agreement; (3) that the $800,000.00 paid under the Agreement effected an accord and satisfaction of all Ringle withdrawal liability; and (4) that plaintiffs' action is barred by the statute of limitations. Because the court finds that plaintiffs released defendant under the Agreement, the court will not address defendants' remaining arguments.

### Summary Judgment

■ Under Fed.R.Civ.P. 56(c), a court should grant a summary judgement motion if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of a genuine issue of material fact. *Id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). When reviewing a summary judgement motion, the court must read the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

■ Where the party opposing summary judgment bears the burden of proof on a dispositive issue, it must offer specific evidence demonstrating a factual basis on which it is entitled to relief. *Id.,* 477 U.S. at 256, 106 S.Ct. at 2514. The party may not rely on conclusory allegations or speculation alone to oppose summary judgment. *Anderson v. Stauffer Chemical Co.,* 965 F.2d 397, 402 (7th Cir., 1992). The non-moving party must set forth specific facts, through affidavits or oth-

er materials, that demonstrate disputed material facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256, 106 S.Ct. at 2514. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.,* 477 U.S. at 247–48, 106 S.Ct. at 2510 [emphasis in original].

### Settlement Agreement Interpretation

■ In construing a settlement agreement under Illinois law, the Seventh Circuit applies a two part inquiry identical to the construction of any contract: (1) examine the plain language of the applicable provisions at issue; and (2) determine if the contract terms are ambiguous. *Lumpkin v. Envirodyne,* 933 F.2d 449, 456 (7th Cir.1991). When the terms of a contract are clear and certain, the contract itself is the only proper evidence of the parties' intent, and the court may not infer that intent which is contrary to the contract's obvious meaning. *Thomas Brady v. Prairie Material Sales, Inc.,* 190 Ill.App.3d 571, 578, 137 Ill.Dec. 857, 861, 546 N.E.2d 802, 806 (2d Dist., 1989); *Gold v. Ziff Communications, Co.,* 265 Ill.App.3d 953, 202 Ill.Dec. 888, 894, 638 N.E.2d 756, 762 (1 Dist., 1994) (where the provisions of a contract are clear and unambiguous, extrinsic evidence cannot be used to show that the parties drafting the document intended something else). While a contract that is reasonably susceptible to more than one interpretation is considered ambiguous, a contract is not ambiguous "if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends." *Murphy v. S–M Delaware, Inc.,* 95 Ill.App.3d 562, 565, 51 Ill.Dec. 42, 45, 420 N.E.2d 456, 459 (1st Dist.1981). A contract is not ambiguous simply because the parties disagree about its meaning. *Id.*

■ In a case where a federal cause of action is at issue, federal law governs the extent to which unnamed parties are bound by a release. *Lumpkin,* 933 F.2d at 457. Because there is no federal common law,

federal courts should apply the applicable state law. *Id.* While the intention of the paries controls the scope and effect of the release, such intent is discerned from the language used in the release and the circumstances of the transaction. *Carona v. Illinois Cent. Gulf R. Co.,* 203 Ill.App.3d 947, 950, 148 Ill.Dec. 933, 936, 561 N.E.2d 239, 242 (5th Dist.1990).

▮ The court finds that the language in the Agreement at issue is unambiguous, and thus the instrument speaks for itself. Therefore, the court will determine and enforce the meaning and intention of the parties from the face of the contract as written, without reference to any previous negotiations. *Central Prod. Credit Ass'n v. Hans,* 189 Ill. App.3d 889, 900, 137 Ill.Dec. 302, 309–10, 545 N.E.2d 1063, 1070–71 (2d Dist.1989). *Lumpkin,* 933 F.2d at 459.

Defendant argues that the Agreement releases any cause of action against any corporation that is in Ringle's common control group. Paragraph 2 of the Agreement states that with the payment of $800,000.00, "the Pension Fund [plaintiffs in the instant case] shall and does hereby satisfy release, acquit and forever discharge the McGriffs *and any members of any group of trades or businesses under common control with Ringle* ... arising out of or in any way connected with ... the Ringle Withdrawal Liability." [5] (Emphasis added.) Accordingly, because the complaint alleges that defendant is liable for damages as the alter-ego of a business under common control with Ringle, defendant was released by the clear language of paragraph 2. *Brady,* 190 Ill.App.3d at 574, 137 Ill.Dec. at 859, 546 N.E.2d at 804 (express language of a release can extinguish the underlying cause of action as to other persons not a party to the agreement).

▮ Defendant further asserts that the damages alleged in plaintiffs' second amended complaint are the same as those released in the Agreement. In the Agreement, plaintiffs defined the damages for its cause of action as the "entire amount of the [Ringle]

withdrawal liability assessment of $2,274,-342.50, interest in the amount of $748,278.76, liquidated damages in the amount of $748,-278.76, billing charges in the amount of $15,-275.88, amortization charges in the amount of $462,228.47, attorney fees and court costs." [6] These damages are the same damages plaintiffs now seek from defendant. The court finds that the language in the Agreement compels the conclusion that plaintiffs released all causes of action for the Ringle Withdrawal Liability and that the Agreement extends to defendant, which is being sued as a "trade or business under common control" with Ringle.

Both parties assert that the language in paragraph "K" supports their arguments: plaintiffs assert that if the parties intended to release all possible claims of non-parties, the parties would not have expressed a desire to settle only those claims "brought in the Federal Court Case relating to the Ringle Withdrawal Liability"; defendant argues that the Agreement's "release [of] any and all claims arising out of or in any way connected with the Federal Court Case and the Ringle Withdrawal Liability" unambiguously states the parties' intent to release the actual withdrawal liability, and the event creating the withdrawal liability not only to the named parties, but to all corporations that are related to the withdrawal liability.

The parties' addition of the final clause in paragraph K, "*and* the Ringle Withdrawal Liability" (emphasis added), expressed their intent not only to settle the claims in the *Machinery Trailer* case, but to release any cause of action arising from the events that created the Ringle Withdrawal Liability. *Grigoleit, Inc. v. Board of Trustees of Sanitary Dist. of Decatur,* 233 Ill.App.3d 606, 615, 174 Ill.Dec. 505, 511, 599 N.E.2d 51, 57 (4 Dist.1992), *pet. for appeal den.,* 147 Ill.2d 627, 180 Ill.Dec. 149, 606 N.E.2d 1226 (1992). This conclusion is supported by the fact that in the first part of the sentence in paragraph K the drafters did not end the paragraph after specifically expressing the desire to compromise the claims brought in the *Ma-*

---

**5.** ¶ 2 of the Agreement as quoted in the facts above.

**6.** While this language is in the Recitals portion of the Agreement, it is incorporated into the terms of the Agreement in paragraph 11 quoted above.

*chinery Trailer* "Federal Court Case *relating* to the Withdrawal Liability." (Emphasis added.) Much as plaintiffs attempt to have the court stop at that point, the drafters of the Agreement did not. The parties went on to add the final clause of the sentence, "and the Pension Fund desires to fully and finally release any and all claims arising out of or in any way connected with the Federal Court Case *and* the Ringle Withdrawal Liability." (Emphasis added.) The court notes that the drafters used the conjunction "and" before "the Ringle Withdrawal Liability" instead of the adverb "relating" as was used in the first part of the sentence. The court finds as a matter of law that the intent of the Agreement was to release both the parties in the *Machinery Trailer* case and all causes of action arising out of the events creating the Ringle Withdrawal Liability.

Plaintiffs assert that the intent of paragraph K must have been to release only the parties in the *Machinery Trailer* case, because the initial draft of the Agreement identified each and every person or entity that would be released thereunder, and that defense counsel had made what they called "very minor changes." Because the court finds that the terms of the Settlement Agreement are unambiguous, it will not consider evidence of the negotiations leading to the settlement or evidence of the parties' intent during those negotiations to interpret the terms of the Settlement. *Rakowski v. Lucente,* (1984), 104 Ill.2d 317, 84 Ill.Dec. 654, 472 N.E.2d 791. *Gold v. Ziff Communications, Co.,* 265 Ill.App.3d 953, 202 Ill.Dec. 888, 894, 638 N.E.2d 756, 762 (1 Dist.1994). The only relevant evidence of the intent of the Agreement is the final document that was signed by all of the parties. Based on the terms of the Agreement, the court finds that the release of plaintiffs' cause of action for damages for the Ringle Withdrawal Liability was intended to benefit all businesses under common control with Ringle within the meaning of § 4001(b)(1) of ERISA.

### Conclusion

Based on the Agreement and the uncontested facts and evidence in this case, taken as favorably to the plaintiffs as the evidence permits, the court finds that plaintiffs are barred from asserting their cause of action in the instant case. Accordingly, the court grants defendant's motion for summary judgment.